**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HENRY FORD HOSPITAL, HENRY FORD HEALTH JACKSON HOSPITAL, HENRY FORD ST. JOHN HOSPITAL, and HENRY FORD HEALTH WYANDOTTE HOSPITAL,<br>*Plaintiffs,*<br>v.<br>CVS HEALTH CORPORATION, CAREMARKPCS HEALTH, LLC, CAREMARK, LLC D/B/A CVS SPECIALTY, WELLPARTNER, LLC, and JOHN DOES 1-15,<br>*Defendants.* | Case No. 2:26-cv-12435<br>Hon. Susan K. DeClercq<br>Hon. Curtis Ivy, Jr. |

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

Defendants CVS Health Corporation, CaremarkPCS Health, LLC, Caremark, LLC, and Wellpartner, LLC (collectively, "Defendants") move under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) to dismiss Plaintiffs' Complaint, ECF 1, for the reasons stated in the accompanying brief.

Pursuant to Local Rule 7.1(a), Defendants' counsel conferred with Plaintiffs' counsel on August 6, 2026 about the nature of this motion and its legal basis. Concurrence in the relief was requested but was not obtained.

WHEREFORE, Defendants request that the Court grant this motion, dismiss the Complaint with prejudice, enter judgment in Defendants' favor, and grant any

further relief the Court deems just and proper.

Dated: August 7, 2026

Respectfully submitted,

/s/ *Roger P. Meyers*

Roger P. Meyers
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (248) 822-7844
Facsimile: (248) 822-7000
meyers@bsplaw.com

Grant A. Geyerman
Joseph S. Sandoval-Bushur

WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024

Telephone: (202) 434-5000
Facsimile: (202) 434-5029
ggeyerman@wc.com
jsandoval-bushur@wc.com

*Attorneys for Defendants CVS Health Corporation, CaremarkPCS Health, LLC, Caremark, LLC, and Wellpartner, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HENRY FORD HOSPITAL, HENRY FORD HEALTH JACKSON HOSPITAL, HENRY FORD ST. JOHN HOSPITAL, and HENRY FORD HEALTH WYANDOTTE HOSPITAL,<br>*Plaintiff*,<br>v.<br>CVS HEALTH CORPORATION, CAREMARKPCS HEALTH, LLC, CAREMARK, LLC D/B/A CVS SPECIALTY, WELLPARTNER, LLC, and JOHN DOES 1-15,<br>*Defendants*. | Case No. 2:26-cv-12435<br>Hon. Susan K. DeClercq<br>Hon. Curtis Ivy, Jr. |

**BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

## CONCISE STATEMENT OF ISSUES PRESENTED

**1. Should the Court dismiss the breach-of-contract claims (Counts I and VIII) because Plaintiffs do not allege having a contract with any Defendant except Caremark, LLC d/b/a CVS Specialty, do not allege what contractual provision CVS Specialty supposedly breached, and do not show that CVS Specialty's alleged conduct was prohibited by any well-pled contractual provision?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

**2. Should the Court dismiss the claim for breach of the implied covenant of good faith and fair dealing (Count V) because Michigan law does not recognize a standalone claim for breach of the implied covenant of good faith and fair dealing?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

**3. Should the Court dismiss the common-law fraud claim (Count III) because Plaintiffs impermissibly recast the breach-of-contract claim as fraud and do not plead fraud with particularity under Rule 9(b)?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

**4. Should the Court dismiss the claim for tortious interference with contract (Count VII) because Plaintiffs fail to plead an underlying breach of the contract, a tortious interference claim cannot lie against these Defendants that are part of one corporate family, the Complaint fails to allege the requisite intent and purpose, and the contract was terminable at will?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

5. **Should the Court dismiss the unjust enrichment claim (Count VI) because Plaintiffs fail to allege that they conferred any benefit upon Defendants and, in any event, recovery is barred due to the existence of an express contract with CVS Specialty addressing the subject matter?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

6. **Should the Court dismiss the Michigan Consumer Protection Act claim (Count II) because the at-issue transaction is a business transaction, not a consumer transaction, and Plaintiffs fail to identify a specific subsection of the MCPA that any Defendant allegedly violated?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

7. **Should the Court dismiss the claim under the Racketeer Influenced and Corrupt Organizations Act (Count IV) because Plaintiffs impermissibly recast their contract claim, do not allege a RICO "enterprise," and do not adequately allege predicate acts?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

8. **Should the Court dismiss Defendant CVS Health Corporation, a holding company with no employees or substantive operations, because the Complaint contains no well pled allegations demonstrating the entity's involvement?**

| | |
|---|---|
| Defendants say: | Yes. |
| Plaintiffs say: | No. |
| This Court should answer: | Yes. |

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**All Sections**

- Fed. R. Civ. P. 12(b)

**Section I. The Court Should Dismiss the Breach-of-Contract Claims**

- *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011)
- *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497 (S.D. Ohio 2022)
- *Johnson Elec. N. Am., Inc. v. Daimay N. Am. Auto., Inc.*, 2020 WL 1531727 (E.D. Mich. Mar. 31, 2020)
- *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518 (6th Cir. 2012)

**Section II. The Court Should Dismiss the Implied Covenant and Good Faith Claim**

- *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463 (2003)
- *Kircher v. Boyne USA, Inc.*, --- Mich. ---, 2025 WL 938147 (Mar. 27, 2025)

**Section III. The Court Should Dismiss the Fraud Claim**

- *Hart v. Ludwig*, 347 Mich. 559 (1956)
- *Voutsiotis v. PNC Bank, NA*, 178 F.4th 951 (6th Cir. 2026)
- Fed. R. Civ. P. 9(b)

**Section IV. The Court Should Dismiss the Tortious Interference with Contract Claim**

- *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710 (6th Cir. 2018)
- *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275 (2013)
- *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380 (E.D. Mich. 2000)

**Section V. The Court Should Dismiss the Unjust Enrichment Claim**

- *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463 (2003)
- *Dan's Excavating, Inc. v. Mich. Dep't of Transp.*, 2024 WL 1597625 (Mich. Ct. App. Apr. 11, 2024)
- *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9 (2012)

**Section VI. The Court Should Dismiss the RICO Claim**

- *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776 (6th Cir. 2000)
- *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)

- *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763 (E.D. Mich. 2010)
- Fed. R. Civ. P. 9(b)
- 18 U.S.C. § 664
- 18 U.S.C. § 1343
- 18 U.S.C. § 1954

**Section VII. The Court Should Dismiss the Michigan Consumer Protection Claim**

- *Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691 (E.D. Mich. 2022)
- *Innovation Ventures, LLC v. N.V.E., Inc.*, 747 F. Supp. 2d 853 (E.D. Mich. 2010)
- Mich. Comp. Laws. § 445.902, § 445.903

**Section VIII. The Court Should Dismiss All Claims Against the Holding Company CVS Health Corporation**

- *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718 (6th Cir. 2007)

# TABLE OF CONTENTS


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

A. The 340B Program Generally ..... 4

B. The Flow of Money Under the 340B Program ..... 5

C. The Complaint's Contract-Terms Allegations ..... 7

D. The Public Controversy Around 340B ..... 9

E. Plaintiffs' Causes of Action ..... 10

ARGUMENT ..... 11

I. The Court Should Dismiss the Breach-of-Contract Claims ..... 11

A. The Contract Claims Fail Against Most Defendants Because No Contract with Them Is Alleged ..... 11

B. The Contract Claims Fail Against CVS Specialty ..... 12

1. The Complaint Does Not Sufficiently Allege a Contract Provision That CVS Specialty Breached ..... 12

2. There Are No Well-Pled Allegations That CVS Specialty Breached Contractual Commitments ..... 13

II. The Court Should Dismiss the Implied Covenant of Good Faith Claim ..... 19

III. The Court Should Dismiss the Fraud Claim ..... 20

A. Plaintiffs Impermissibly Recast the Contract Claim as "Fraud" ..... 20

B. Fraud Is Not Pleaded with Particularity ..... 22

IV. The Court Should Dismiss the Tortious Interference with Contract Claim ..... 24

V. The Court Should Dismiss the Unjust Enrichment Claim ..... 27

VI. The Court Should Dismiss the RICO Claim ....................................... 29

A. Plaintiffs Cannot Recharacterize their Contract Claims as a RICO Claim ....................................... 29

B. Plaintiffs Do Not Plausibly Allege a RICO "Enterprise" ......... 30

C. Plaintiffs Fail to Adequately Plead Predicate Acts ................... 31

1. Plaintiffs Suffered No Injury from Two Alleged Predicate Acts ....................................... 31

2. Plaintiffs Do Not Allege Any Predicate Act with Particularity ....................................... 33

VII. The Court Should Dismiss the Michigan Consumer Protection Claim ....................................... 36

VIII. The Court Should Dismiss All Claims Against the Holding Company CVS Health Corporation ....................................... 38

CONCLUSION ....................................... 40

## TABLE OF AUTHORITIES

### CASES

*AbbVie, Inc. v. Murrill*,
--- F.4th ---, 2026 WL 1947948 (5th Cir. July 6, 2026) .................................... 15

*Acrisure, LLC v. Hudak*,
618 F. Supp. 3d 642 (W.D. Mich. 2022) .................................................... 19, 20

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
194 Mich. App. 300 (1992) ........................................................................ 24

*Akinwusi v. Fed. Home Loan Mortg. Corp.*,
2013 WL 1282018 (E.D. Mich. Mar. 27, 2013) ............................................... 27

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .................................................................................... 16

*Anthem, Inc. v. Express Scripts, Inc.*,
660 F. Supp. 3d 169 (S.D.N.Y. 2023) ............................................................. 5

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011) .................................................................................. 4, 15

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
898 F.3d 710 (6th Cir. 2018) ........................................................................ 26

*Begala v. PNC Bank, Ohio, Nat'l Ass'n*,
214 F.3d 776 (6th Cir. 2000) ........................................................................ 30

*Belle Isle Grill Corp. v. City of Detroit*,
256 Mich. App. 463 (2003) .................................................................. 20, 27, 29

*Benoay v. Decker*,
517 F. Supp. 490 (E.D. Mich. 1981) ............................................................... 39

*Bloodstock Rsch. Info. Servs., Inc. v. Edbain.com, LLC*,
622 F. Supp. 2d 504 (E.D. Ky. 2009) .............................................................. 35

*Broder v. Cablevision Sys. Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004) ......................................................... 15, 16

*Burton v. William Beaumont Hosp.*,
373 F. Supp. 2d 707 (E.D. Mich. 2005) ..........11

*C & L Ward Bros, Co. v. Outsource Sols., Inc.*,
2012 WL 3157005 (E.D. Mich. Aug. 3, 2012)..........35

*Church Ekklasia Sozo Inc. v. CVS Health Corp.*,
2022 WL 1572732 (W.D.N.C. Feb. 25, 2022) ..........39

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016)..........39, 40

*Corrigan v. U.S. Steel Corp.*,
478 F.3d 718 (6th Cir. 2007) ..........39

*Dalley v. Dykema Gossett*,
287 Mich. App. 296 (2010) ..........26

*Dan's Excavating, Inc. v. Mich. Dep't of Transp.*,
2024 WL 1597625 (Mich. Ct. App. Apr. 11, 2024)..........28

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
1988 WL 156334 (N.D. Ohio Nov. 30, 1988)..........29

*Derderian v. Genesys Health Care Sys.*,
263 Mich. App. 364 (2004) ..........25, 26

*Doe v. BMG Sports, LLC*,
584 F. Supp. 3d 497 (S.D. Ohio 2022)..........12, 13

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011) ..........33

*Empire Merchants, LLC v. Reliable Churchill LLP*,
2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017)..........31, 32

*General Motors LLC v. FCA US LLC*,
2020 WL 3833058 (E.D. Mich. July 8, 2020)..........32

*Geomatrix, LLC v. NSF Int'l*,
629 F. Supp. 3d 691 (E.D. Mich. 2022) ..........37

*Gorman v. Am. Honda Motor Co.*,
302 Mich. App. 113 (2013) ....................20

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 2017 WL 3116262 (E.D. Mich. July 21, 2017), ....................21, 22

*Griffin v. NBD Bank*,
43 F. Supp. 2d 780 (W.D. Mich. 1999) ....................35

*Grow Mich., LLC v. LT Lender, LLC*,
50 F.4th 587 (6th Cir. 2022) ....................30, 31, 32, 33

*Gucwa v. Lawley*, 731 F. App'x 408 (6th Cir. 2018) ....................24

*Hanning v. Homecomings Fin. Networks*,
436 F. Supp. 2d 865 (W.D. Mich. 2006) ....................23

*Hart v. Ludwig*, 347 Mich. 559 (1956) ....................21

*Heaton v. Bank of Am. Corp.*,
2011 WL 3112325 (E.D. Mich. July 26, 2011) ....................29

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
668 F.3d 393 (6th Cir. 2012) ....................32

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ....................31

*Home Owners Ins. Co. v. ADT LLC*,
109 F. Supp. 3d 1000 (E.D. Mich. 2015) ....................20, 21, 22

*Home Quarters Real Est. Grp., LLC v. Mich. Data Exch., Inc.*,
2009 WL 10680603 (E.D. Mich. Dec. 9, 2009) ....................18, 19

*Hoover v. Langston Equip. Assocs.*,
958 F.2d 742 (6th Cir. 1992) ....................23, 24

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
255 F. Supp. 2d 751 (N.D. Ohio 2003) ....................39

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ....................28

*Innovation Ventures, LLC v. N.V.E., Inc.*,
747 F. Supp. 2d 853 (E.D. Mich. 2010) ....................................................38

*Jackson Cnty. Hog Producers v. Consumers Power Co.*,
234 Mich. App. 72 (1999) ....................................................................37

*Jesa Enters. Ltd v. Thermoflex Corp.*,
2016 WL 4376176 (E.D. Mich. Aug. 17, 2016)..........................................19

*Johnson Elec. N. Am., Inc. v. Daimay N. Am. Auto., Inc.*,
2020 WL 1531727 (E.D. Mich. Mar. 31, 2020)....................................11, 12

*Jones v. U.S. Dept. of Educ.*,
2017 WL 9471877 (E.D. Mich. Feb. 12, 2017)..........................................38

*Karaus v. Bank of New York Mellon*,
300 Mich. App. 9 (2012) ...............................................................27, 28

*Kevelighan v. Trott & Trott, P.C.*,
771 F. Supp. 2d 763 (E.D. Mich. 2010) ....................................................29

*Kircher v. Boyne USA, Inc.*,
--- Mich. ---, 2025 WL 938147 (Mich. Mar. 27, 2025)...........................19, 20

*Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*,
930 F.3d 775 (6th Cir. 2019) ..................................................................25

*Knight Enters. v. RPF Oil Co.*,
299 Mich. App. 275 (2013) ...........................................................24, 26, 27

*Leonor v. Provident Life & Acc. Co.*,
2013 WL 1163375 (E.D. Mich. Mar. 20, 2013)..........................................22

*Lowe's Home Ctrs., Inc. v. LL & 127, LLC*,
147 F. App'x 516 (6th Cir. 2005) .............................................................19

*Maiberger v. City of Livonia*,
724 F. Supp. 2d 759 (E.D. Mich. 2010) ....................................................25

*Matsumara v. Benihana Nat'l Corp.*,
542 F. Supp. 2d 245 (S.D.N.Y. 2008) .......................................................33

*Miller-Davis Co. v. Ahrens Const., Inc.*,
495 Mich. 161 (2014) ....................18

*MJC Ventures LLC v. Detroit Trading Co.*,
2021 WL 1212534 (E.D. Mich. Mar. 31, 2021)....................18

*Moukalled v. Minn. Mut. Life Ins. Co.*,
2002 WL 31008839 (E.D. Mich. Aug. 19, 2022)....................37

*Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*,
492 F. App'x 518 (6th Cir. 2012)....................12, 13

*PhRMA v. HHS*,
43 F. Supp. 3d 28 (D.D.C. May 23, 2014) ....................9

*Puckett v. Tenn. Eastman Co.*,
889 F.2d 1481 (6th Cir. 1989) ....................30

*Riley v. Phoenix Cmty Cap.*,
827 F. Supp. 3d 1029 (M.D. Tenn. 2026) ....................35, 36

*Robertson v. State Farm Fire & Cas. Co.*,
890 F. Supp. 671 (E.D. Mich. 1995) ....................37

*Rollison v. Kingsbury*,
2015 WL 4389767 (Mich. Ct. App. July 16, 2015)....................24

*Shields v. UnumProvident Corp.*,
415 F. App'x 686 (6th Cir. 2011)....................30

*Tashjian v. CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass. Mar. 13, 2020) ....................40

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................38, 39

*United States v. Whitfield*,
663 F. App'x 400 (6th Cir. 2016)....................33

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
395 B.R. 520 (E.D.N.Y. 2008) ....................34, 35

*Volunteer Energy Servs., Inc. v. Option Energy, LLC*,
579 F. App'x 319 (6th Cir. 2014) ....................26

*Voutsiotis v. PNC Bank, NA*,
178 F.4th 951 (6th Cir. 2026) ....................22, 23, 24

*Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*,
623 F.3d 281 (6th Cir. 2010) ....................26

*Willis v. New World Van Lines, Inc.*,
123 F. Supp. 2d 380 (E.D. Mich. 2000) ....................25

*Zine v. Chrysler Corp.*,
236 Mich. App. 261 (1999) ....................37

**STATUTES**

18 U.S.C. § 664 ....................31, 33, 34

18 U.S.C. § 1343 ....................31

18 U.S.C. § 1954 ....................31, 34, 35

18 U.S.C. § 1964 ....................31

42 U.S.C. § 256b ....................3, 4

Mich. Comp. Laws. § 445.902 ....................37

Mich. Comp. Laws. § 445.903 ....................11, 38

Mich. Comp. Laws § 550.926 ....................16, 17

**REGULATIONS & RULEMAKINGS**

42 C.F.R. § 10.1 *et seq.* ....................15

75 Fed. Reg. 10,272 (Mar. 5, 2010) ....................10, 15

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .................... *passim*

## OTHER AUTHORITIES

*The 340B Drug Discount Program: Litigation Topics & Trends*, Cong. Rsch. Serv. (Sept. 10, 2025), https://bit.ly/451i2bZ....................................4, 5, 9

S. Thomas & K. Schulman, *The Unintended Consequences of the 340B Safety-Net Drug Program*, 55 Health Servs. Rsch. 153 (Mar. 1, 2020), https://bit.ly/4wNooI9.........................................................................10

## INTRODUCTION

The federal 340B program is politically controversial. It requires pharmaceutical manufacturers to sell drugs to certain healthcare facilities at reduced prices. Those facilities generate so-called 340B "savings" by acquiring the discounted drugs and selling them to patients at a higher price. Pharmaceutical manufacturers have been critical of how healthcare facilities—like the Plaintiff-hospitals here—use those savings. Manufacturers have also been critical of Congress for failing to restrict how hospitals use those 340B savings and for failing to restrict hospitals' ability to contract with so-called 340B "contract pharmacies" to capture more 340B savings when patients elect to fill prescriptions at those pharmacies. Under the 340B program, Plaintiffs play no role in determining how much insurance companies pay a pharmacy benefits manager (like Defendant CaremarkPCS Health, LLC) or, in turn, how much a PBM pays a contract pharmacy (like Defendant Caremark, LLC d/b/a CVS Specialty) for 340B-eligible drug claims. And no statute, regulation, or other law restricts how 340B savings are divided between the hospital, on the one hand, and the contract pharmacy, on the other, pursuant to the hospital-contract pharmacy contract.

In spite of this, the Complaint reads as if the case raises important questions about the 340B program. It does not. It is a simple contract case in which Plaintiffs claim they were underpaid by Caremark, LLC, a specialty pharmacy, under the terms

of the parties' contract.

Although Plaintiffs have sued both Caremark, LLC d/b/a CVS Specialty ("CVS Specialty")[1] and three other entities in the same corporate family—a pharmacy benefits manager (CaremarkPCS Health, LLC), a 340B administrator (Wellpartner, LLC), and their ultimate parent (CVS Health Corporation)—the only Defendant alleged to have actually contracted with Plaintiffs is CVS Specialty. The claims for breach of contract and denial of an audit, then, necessarily fail against the other Defendants.

The Complaint also fails to state a claim for breach of contract against CVS Specialty. It never identifies the essential elements of the parties' agreement—the language, the paragraph(s), the section(s)—that CVS Specialty supposedly violated by calculating Plaintiffs' share of the reimbursement. This omission (and others) foreclose any plausible allegation of a breach of contract. And the implied covenant of good faith and fair dealing is not a permissible standalone claim under Michigan law.

Nor does the Complaint successfully plead fraud, unjust enrichment, or

[1] The Complaint in this case, unlike in the related case *University of Michigan Hospitals & Health Centers v. CVS Health Corporation*, 2:26-cv-11618-SKD-CI, does not name CVS Specialty as a defendant, but (rightly) recognizes it as a trade name used by Caremark, LLC. *See also* Joint Stipulation to Amend Caption and Complaint, 2:26-cv-11618-SKD-CI, PageID.206–210, ECF 19.

tortious interference with contract. These claims fail when, as here, they are duplicative of a breach-of-contract claim. These claims also are pleaded only vaguely, not with particularity or specificity. The fraud claim, for example, never identifies anyone who made a supposedly false statement, when it happened, where it happened, and who at Plaintiffs received it and relied upon it.

The same is true of Plaintiffs' statutory claims under RICO and the Michigan Consumer Protection Act. The allegations cannot satisfy RICO's "enterprise" requirement given the Defendants' familial relationship, and Plaintiffs do not sufficiently allege the predicate acts. The Michigan Consumer Protection Act claim fails because this case involves a contract dispute between two businesses, not consumer-oriented conduct for which the statute provides a remedy.

The Court should grant the motion and dismiss the Complaint.

## FACTUAL BACKGROUND

The Plaintiffs here—Henry Ford Hospital, Henry Ford Health Jackson Hospital, Henry Ford St. John Hospital, and Henry Ford Health Wyandotte Hospital—operate hospitals in eastern Michigan and qualify as "covered entit[ies]" under the federal 340B program. 42 U.S.C. § 256b(a)(4); Compl. (ECF 1, PageID.1) ¶¶ 4, 27–31.[2]

The named Defendants are CVS Health, a holding company of various

[2] As they must, Defendants treat the Complaint's allegations as true in this motion.

healthcare companies, and three of its operating subsidiaries: CaremarkPCS Health, LLC, a pharmacy benefits manager or "PBM," *id.* ¶¶ 9, 34; CVS Specialty, an operator of "specialty pharmacies," *id.* ¶¶ 4, 35–36; and Wellpartner, LLC, a provider of "third party administration services" for 340B covered entities, *id.* ¶ 37. The Complaint also names 15 "John Does," although it never identifies even one particular name, position, or title, or attributes any action (wrongful or otherwise) to anyone in particular. Compl. ¶¶ 39–42.

### A. The 340B Program Generally

Section 340B of the Public Health Services Act instructs the Secretary of Health and Human Services to contract with pharmaceutical manufacturers, wherein the manufacturers commit to offering "covered outpatient drugs" at reduced prices to healthcare providers called "covered entit[ies]." 42 U.S.C. § 256b(a)(1); *see Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 113 (2011). Those "covered entities" are enumerated in the statute and include hospitals that serve a "disproportionate share" of low-income patients. 42 U.S.C. § 256b(a)(4)(A), (L). In effect, "Section 340B . . . imposes ceilings on prices drug manufacturers may charge for medications sold to" covered entities. *Astra*, 563 U.S. at 113.

"Covered entities may generate significant revenue from 340B, known as '340B savings.'" *The 340B Drug Discount Program: Litigation Topics & Trends*, Cong. Rsch. Serv., at 1 (Sept. 10, 2025), https://bit.ly/451i2bZ ("CRS Rep."); *accord*

Compl. ¶¶ 2, 54–55. Those savings result because covered entities buy drugs from manufacturers at substantial discounts and then "resell[] discounted drugs to their patients and receiv[e] reimbursement from the patient's insurance (if applicable) as though the covered entity paid full price for the drug." CRS Rep., at 1.

### B. The Flow of Money Under the 340B Program

Anytime a patient with insurance fills a prescription (whether 340B-eligible or not), the pharmacy will submit a "claim" to an entity known as a pharmacy benefits manager, or "PBM." Compl. ¶ 62. "PBMs are primarily responsible for processing and paying prescription drug claims submitted by [pharmacies]." *Id.* "PBMs are fiscal intermediaries" that sit between the insurer, on one hand, and the pharmacy, on the other. *Id.* The insurer pays the PBM for the prescription per the financial terms of an insurer-to-PBM contract, and the PBM pays the pharmacy for the prescription per the terms of a pharmacy-to-PBM contract. *See, e.g.*, *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 173 (S.D.N.Y. 2023). The PBM determines these two amounts during an electronic "adjudication" process. Compl. ¶ 79. The insurer's payment to the PBM is not always the same as the PBM's payment to the pharmacy; whether those payments are the same or different depends upon the terms of the insurer-to-PBM contract. *See, e.g.*, *Anthem*, 660 F. Supp. 3d at 173. The Complaint does not allege otherwise.

A 340B transaction is more complicated, involving at least two additional

stakeholders: the covered entity and the manufacturer. *Supra* p. 4. Because manufacturers must sell drugs at or below the 340B ceiling price only when the program criteria are met, covered entities must "determin[e] whether a particular claim is 340B eligible." Compl. ¶ 80. They often hire a third-party administrator to do this "complex" and "retroactive[]" process that is performed after the pharmacy has already given the drug to the patient. *Id.* ¶¶ 80–81.

To synthesize these steps for an example 340B prescription:

*First*, one of Plaintiffs' patients obtains the prescribed medication from either the covered entity itself (via its in-house pharmacy) or from an outside pharmacy with which the covered entity has contracted, the so-called "contract pharmacy." Compl. ¶ 56. This case concerns prescriptions dispensed by CVS Specialty in its capacity as a contract pharmacy. *See id.* ¶ 92.

*Second,* if the patient of a covered entity chooses to obtain a prescription from CVS Specialty, the pharmacy transmits a "claim" to the PBM associated with the patient's insurer.

*Third*, if that PBM is CaremarkPCS Health, then CaremarkPCS Health determines what the patient owes for the medicine. *Id.* ¶ 79. CaremarkPCS Health transmits that number back to the pharmacy, the patient pays a cost-share, and CVS Specialty dispenses the prescription. *Id.*

*Fourth*, "[a]fter the point of sale," an administrator will analyze data to

determine whether the prescription is eligible for the 340B program. *Id.* ¶ 11. In this case, the 340B administrator is Wellpartner. *Id.* ¶ 82. If the claim is 340B-eligible, "Wellpartner flags the adjudicated claim as a 340B claim and relays that information to CaremarkPCS [Health]." *Id.* ¶ 11.

*Fifth*, CaremarkPCS Health (the PBM) reimburses CVS Specialty (the specialty pharmacy) for the prescription. *Id.* ¶ 12.

*Sixth*, CVS Specialty's reimbursement is allocated three ways: CVS Specialty keeps "a certain defined percentage . . . as [its] dispensing fee," *id.* ¶ 7; Wellpartner, as administrator, receives its own "administrative fee," *id*. ¶ 87; and a share goes to Plaintiff, the covered entity. This case concerns whether Plaintiffs received too little a share under their contracts with CVS Specialty.

At some point during this process, CaremarkPCS Health (the PBM) also determines the amount it is owed by the insurer (which may or may not be the same amount the pharmacy receives), and invoices the insurer for that amount. *Id.* ¶ 79.

### C. The Complaint's Contract-Terms Allegations

The Complaint is clear that "Plaintiffs entered into Pharmacy Services Agreements [plural] with [CVS Specialty] for pharmacy services through [CVS Specialty]'s contract specialty pharmacies." *Id.* ¶ 32. Yet the Complaint does not address many facts about the contracts, such as the number of contracts, when they started, when they terminated, or what the parties intended. The Complaint does not

allege that Plaintiffs contracted with any Defendant but CVS Specialty.

Despite asserting a breach of contract as its lead claim, the Complaint does not attach the contract(s). Nor does it quote a specific provision(s) that was supposedly breached. Instead, the Complaint includes only one sentence revealing Plaintiffs' thinking: "[t]he Agreements between Plaintiffs and [CVS Specialty] require Defendants [plural] to pass along to Plaintiffs all revenues the PBM receives from insurance carriers and other third-party payors for 340B-discounted drugs dispensed, minus a dispensing fee." *Id.* ¶ 6. But the Complaint does not cite, much less quote, any specific provision that actually said Plaintiffs must receive "all revenues the PBM receives from insurance carriers," as opposed to, for example, the amount of the specialty pharmacy's reimbursement. The Complaint does not even allege the specific percentage(s) that CVS Specialty was owed or Wellpartner, LLC's fee. The Complaint also does not allege any specific facts concerning how CaremarkPCS Health calculated CVS Specialty's reimbursement on 340B prescriptions, despite pejoratively saying it was "artificially reduced" or "arbitrarily slash[ed]." *Id.* ¶¶ 89, 119.

The Complaint also acknowledges that CVS Specialty has "terminated Plaintiffs from the 340B Contract Pharmacy arrangement," but is silent about the contract's terms specifying the circumstances in which CVS Specialty (or Plaintiff) was permitted to terminate the arrangement. *Id.* ¶ 24 (emphasis omitted). The

Complaint does not, therefore, allege the contract was anything other than terminable at will. The parties have no ongoing business relationship.

### D. The Public Controversy Around 340B

"The [340B] program is administered by the Office of Pharmacy Affairs (OPA) at the Health Resources and Services Administration (HRSA), a division of the U.S. Department of Health and Human Services (HHS)." CRS Rep., at 1. "Particularly since 2020, both legal and policy disagreements have arisen between HRSA, covered entities, and drug manufacturers about how HRSA ensures compliance from both covered entities and manufacturers, as well as how the agency enforces the [340B] statute." *Id.* at 3. No Defendant is a covered entity or a manufacturer.

Relevant here, Congress has never dictated how covered entities must spend 340B savings, or how the savings must be used or allocated under a covered entity's agreement(s) with contract pharmacies or administrators. Nor has HRSA done so via regulation. Indeed, "the 340B statute does not give [HRSA] general rulemaking authority to administer the program." *Id.* at 3; *see PhRMA v. HHS*, 43 F. Supp. 3d 28, 41 (D.D.C. May 23, 2014). That is why the Complaint repeatedly refers to "guidance," not any specific regulation. *See, e.g.*, Compl. ¶¶ 56–57, 105.

The Complaint acknowledges the program's lack of constraints. Although "in theory," Plaintiffs say, "340B providers 'pass on' those savings to their patients

through lower costs for medications," in reality "340B providers . . . use those greater profit margins [created by the manufacturer discounts] to subsidize other unfunded areas of their operations." *Id.* ¶ 55; *see also*, *e.g.*, S. Thomas & K. Schulman, *The Unintended Consequences of the 340B Safety-Net Drug Program*, 55 Health Servs. Rsch. 153, 154 (Mar. 1, 2020), https://bit.ly/4wNooI9 (noting "concerns" that "benefits may not be going to the intended low-income and uninsured patients" since nothing requires covered entities to use savings for "charity care service[s]"). Tellingly, the Complaint does not say how Plaintiffs spent the hundreds of millions in savings received because their patients selected CVS Specialty as their pharmacy.[3]

Here, the upshot of the lack of constraints is simple: only the contract between a covered entity and a contract pharmacy controls what the pharmacy should pay the covered entity.

**E. Plaintiffs' Causes of Action**

The Complaint asserts (1) breach of contract, (2) breach of the contract's audit provision, (3) breach of the implied covenant of good faith and fair dealing,

[3] Notably, if a covered entity's patient chooses to use a pharmacy that is not a contract or in-house pharmacy, then the patient's prescription is ineligible for 340B pricing. *See, e.g.*, 75 Fed. Reg. 10,272, 10,278 (Mar. 5, 2010). For this reason, covered entities are financially incentivized to maximize their patients' use of contract pharmacies or in-house pharmacies relative to competitors, in order to increase the volume of 340B-related prescriptions that have more favorable acquisition costs.

(4) fraud, (5) tortious interference with contract, (6) unjust enrichment, (7) civil RICO, and (8) violations of the Michigan Consumer Protection Act, Section 445.903. Compl. ¶¶ 169–251. Plaintiffs assert each claim against every Defendant.

## ARGUMENT

### I. The Court Should Dismiss the Breach-of-Contract Claims

#### A. The Contract Claims Fail Against Most Defendants Because No Contract with Them Is Alleged

"Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005). "A defendant cannot be sued for breaching a contract it is not a party to." *Johnson Elec. N. Am., Inc. v. Daimay N. Am. Auto., Inc.*, 2020 WL 1531727, at *2 (E.D. Mich. Mar. 31, 2020).[4]

Here Plaintiffs allege contracting only with CVS Specialty. Compl. ¶¶ 30, 170. Plaintiffs do not allege any other Defendant was a signatory to the contracts between CVS Specialty and the covered entities. Thus, Plaintiffs' contract claims (Counts I and VIII) clearly fail against all non-CVS Specialty defendants. *See Johnson Elec.*, 2020 WL 1531727, at *2–3 (dismissing contract claim against non-

[4] Unless noted, all internal quotations are omitted and all emphasis is added.

party to contract).

### B. The Contract Claims Fail Against CVS Specialty

#### 1. The Complaint Does Not Sufficiently Allege a Contract Provision That CVS Specialty Breached

"[I]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (citation omitted). Where a plaintiff has not attached the contract or pled its "specific language," it "has failed to put forth a plausible claim for relief." *Id.*

The Complaint here does not quote from or attach the contract with CVS Specialty and fails to identify with any specificity the "specific terms" that CVS Specialty is supposedly liable for violating. The deficiency mirrors that in *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497 (S.D. Ohio 2022). There, the plaintiff alleged that he "entered into a contract with [the defendants] to provide coaching, instruction, practice, and game opportunities for his daughter to play volleyball." *Id.* at 507. But the plaintiff's complaint did not "attach the alleged contract" or "quote the terms of the contract upon which this [breach-of-contract] claim [wa]s based." *Id.* (alteration adopted). The Court observed that, in the Sixth Circuit, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly

breached." *Id.* (quoting *Northampton*, 492 F. App'x at 522). Accordingly, the Court concluded that the plaintiff's failure to "point[] to any specific language in the purported contract" was "fatal to his breach of contract claim" and dismissed it. *Id.* So too here. The Complaint states only that "[t]he Agreements between Plaintiffs and [CVS Specialty] require Defendants [plural] to pass along to Plaintiffs all revenues the PBM receives from insurance carriers and other third-party payors for the 340B-discounted drugs dispensed, minus a dispensing fee." Compl. ¶ 6. Without pleading "specific language in the purported contract," Plaintiffs fall short of stating a claim for breach of contract. *Doe*, 584 F. Supp. 3d at 507.

**2. There Are No Well-Pled Allegations That CVS Specialty Breached Contractual Commitments**

Without committing to any specific contractual language that supposedly supports Plaintiffs' claim of breach, the Complaint throws out five reasons why CVS Specialty allegedly "failed to perform under the Agreements." *See* Compl. ¶ 177. The Complaint, however, never ties any of these five reasons to contractual language that CVS Specialty committed to follow, foreclosing any well-pled contract claim. Each reason is addressed in turn.

1. CVS Specialty breached the contract, Plaintiffs say, by "not remitting all payments made to CaremarkPCS [by insurers] at the point-of-sale for the 340B drugs to Plaintiffs." Compl. ¶ 178(1). But Plaintiffs never allege any specific contractual provision in which CVS Specialty, a specialty pharmacy, committed to remitting to

Plaintiffs "all payments made to CaremarkPCS," a PBM and different company engaged in a different line of business. Plaintiffs' vague statement that "[t]he Agreements contain a provision relating to the remittance of all reimbursement obtained by Defendants from all sources" is not well pled. *Id.* ¶ 171. Many things could be said to "relate to" the different reimbursement amounts "obtained by [the various] Defendants." Yet that is far from identifying a specific contractual provision that committed CVS Specialty to pay Plaintiffs an amount calculated from reimbursements received by other entities.

2. Plaintiffs also characterize the breach as "lowering the 340B reimbursement amount paid to []CVS Specialty for no purpose other than to deprive Plaintiffs of the 340B Savings." *Id.* ¶ 177(2). This fails too. If the PBM "lower[ed] the 340B reimbursement amount paid *to []CVS Specialty*," *id.*, that does not suggest a violation of any promise of performance that CVS Specialty made *to Plaintiffs.* The Complaint contains no factual allegations suggesting that CVS Specialty made any commitments to Plaintiffs about what 340B reimbursement amounts CVS Specialty would receive from the PBM.

3. Plaintiffs further contend CVS Specialty breached its contract by "not complying with HRSA and OPA regulations and guidelines" that supposedly "require []CVS Specialty to ensure that all 340B savings will accrue to the Covered Entities and that Defendants will not retain Spread on 340B claims." *Id.* ¶ 177(3).

*But there are no such regulations or guidelines*. That is why the Complaint does not name any. Indeed, HRSA (and its parent agency HHS) "lack[] authority to regulate" contract pharmacies, like CVS Specialty, in the first place. *AbbVie, Inc. v. Murrill*, --- F.4th ---, 2026 WL 1947948, at *11 n.94 (5th Cir. July 6, 2026). HRSA regulates manufacturers and covered entities, 42 C.F.R. § 10.1 *et seq.*, but CVS Specialty is not such an entity.

At most, the Complaint alleges actions that are supposedly "contrary to the intent and purpose of the 340B Program," Compl. ¶ 22, citing a statement from HRSA that "the benefit of the program was intended to accrue to the covered entities," *id.* ¶ 106 (quoting 75 Fed. Reg. at 10,277). Notably, though, HRSA referenced this general intent in *rejecting* a proposed suggestion to "include in its final guidance . . . language to reinforce that all savings from the 340B program should remain with the covered entity." 75 Fed. Reg. at 10,277. In short, when 340B stakeholders pressed HRSA to say that a specified amount of 340B savings remain with covered entities, HRSA declined to do so.

Compounding the problem, Plaintiffs cannot use a contract claim to enforce a HRSA regulation. "[C]overed entities have no right of action under § 340B." *Astra*, 563 U.S. at 117. Congress instead "vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities." *Id.*; *see also Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 559

(S.D.N.Y. 2004) (rejecting breach-of-contract claim premised on statute that lacked a private right of action), *aff'd*, 418 F.3d 187 (2d Cir. 2005). Moreover, only statutes enacted by Congress, not regulations promulgated by agencies, can create a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

4. Plaintiffs also claim that CVS Specialty breached by "not complying with Michigan's 340B Pricing Law," which was enacted in 2022. Compl. ¶ 177(5). According to Plaintiffs, "[t]he scheme violates Michigan's 340B Pricing Law, MCL § 550.926, because it discriminates against the Covered Entities by prov[iding] for less favorable reimbursement than if that same drug were not a 340B drug claim." *Id.* ¶ 17. That theory fails for several reasons.

*First*, Plaintiffs again are using a contract claim as an impermissible "end-run" around a statute's lack of a private right of action. *Broder*, 329 F. Supp. 2d at 560. Nothing suggests the legislature intended there to be a private right of action to enforce Section 550.926. Instead, the statute provides administrative remedies, and Plaintiffs point to no provision indicating a private right of action was intended.

*Second*, the Complaint never plausibly explains what specific contractual mandate CVS Specialty—a contract pharmacy—supposedly violated. Section 550.926(1) addresses how a "third party administrator that is a pharmacy benefit manager" should "reimburse a 340B Program entity or a pharmacy under contract with a 340B Program entity" compared to "other similarly situated pharmacies"; by

contrast, it does not regulate a contract pharmacy's relationship with a covered entity, including the terms of reimbursement between the two. Therefore, even though the Complaint alleges (vaguely and without specificity) that the contract contains a "compliance with law provision, where Defendants agreed to comply with laws, including . . . MCL § 550.926," that is immaterial. Compl. ¶ 176. In this case, a contract pharmacy (CVS Specialty) is reimbursing the Plaintiffs under their Pharmacy Services Agreements. A PBM is not reimbursing Plaintiffs. Yet Plaintiffs' entire contention here is that the contract pharmacy breached its agreement by underpaying Plaintiffs. That allegation simply does not implicate Section 550.926, which regulates PBMs, not contract pharmacies.

5. Plaintiffs' last theory is that CVS Specialty did "not comply[] with Plaintiffs' reasonable audit requests." Compl. ¶ 178(4). Plaintiffs also independently raises this theory in Count VIII for "Denial of an Audit." *Id.* ¶¶ 246–52. This theory fails for two reasons.[5]

*First*, Plaintiffs fail to plead the contract language and associated facts giving rise to potential audit-related liability. Plaintiffs allege generically that "[t]he

[5] Plaintiffs contend that only CVS Specialty "had a contractual duty to cooperate with Plaintiffs' requests to audit the pharmacies' books and records," Compl. ¶ 246, claiming it "refused Plaintiffs' request for access to [its] books and records," *id*. ¶ 248. So, at a minimum, Plaintiffs' audit-related claims against all Defendants other than CVS Specialty should be dismissed.

Pharmacy Services Agreements contain procedures for Plaintiffs to conduct audits of CVS Specialty." *Id.* ¶ 98. But to say "conduct[ing] audits" was permitted is vague and does not say what information was auditable versus not, under what circumstances audits were permitted, what conditions must precede an audit, etc. In other words, Plaintiffs do not allege any specifics concerning what "procedures" were promised, properly invoked, but then not provided. Indeed, Plaintiffs' failure to allege even *that they themselves* complied with the audit "procedures" such as to trigger CVS Specialty's obligation to permit an audit is reason to dismiss the claim.

*Second*, Plaintiffs fail to plead any cognizable damages attributable to the denial of an audit. "[C]ausation of damages is an essential element of any breach of contract action." *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014). Nowhere in the Complaint do Plaintiffs claim to have suffered any independent harm *from the denial of an audit itself*. Thus, the audit-related claims fail. *See MJC Ventures LLC v. Detroit Trading Co.*, 2021 WL 1212534, at *13 (E.D. Mich. Mar. 31, 2021) (dismissing breach of contract claim "[r]egardless of Plaintiffs' ability to adequately plead" a contract was breached because "the complaint fails to provide any facts" relating to the "essential" element of "damages"); *see also Home Quarters Real Est. Grp., LLC v. Mich. Data Exch., Inc.*, 2009 WL 10680603, at *3 (E.D. Mich. Dec. 9, 2009) ("Because damages is an essential element of a breach of contract claim under Michigan law, a pleading that

fails to supply factual allegations of damages is insufficient to state a claim for breach of contract under Michigan law.").

Plaintiffs' requests for specific performance do not save the audit claims. In effect, Plaintiffs ask the Court to require CVS Specialty to continue working with them by (1) "enjoin[ing] the . . . terminations of the Agreements," (2) "enjoining . . . CVS Specialty from restricting Plaintiffs' access to the pharmacy's books and records" despite no ongoing contractual relationship, and (3) "requiring . . . CVS Specialty to comply with the audit provisions of the Agreements." Compl. ¶¶ 249–50. Plaintiffs fail to allege the contracts with CVS Specialty were not terminable at will,[6] and therefore, Plaintiffs cannot demand specific performance for the contracts. *See Lowe's Home Ctrs., Inc. v. LL & 127, LLC*, 147 F. App'x 516, 524 (6th Cir. 2005).

## II. The Court Should Dismiss the Implied Covenant of Good Faith Claim

Plaintiffs asserts an implied-covenant claim against every Defendant. *See* Compl. ¶¶ 229–35. But Michigan law does not recognize an "independent cause of action for breach of the implied covenant." *Kircher v. Boyne USA, Inc.*, --- Mich. ---, 2025 WL 938147, at *3 (Mich. Mar. 27, 2025); *see also Acrisure, LLC v. Hudak*,

[6] "[I]n Michigan, contracts of indefinite duration are terminable at will unless the agreement specifies a particular manner for terminating the agreement." *Jesa Enters. Ltd v. Thermoflex Corp.*, 2016 WL 4376176, at *4 (E.D. Mich. Aug. 17, 2016). The Complaint does not allege a particular manner of terminating the contract was necessary, nor that the agreement was for a fixed duration.

618 F. Supp. 3d 642, 648 (W.D. Mich. 2022) (same) (collecting cases). The implied covenant is merely "an interpretive tool by which contractual obligations or other statutory duties are to be measured and judged." *Kircher*, 2025 WL 938147, at *3. "[T]he obligation of good faith has no application apart from some other contractual obligation or statutory duty." *Gorman v. Am. Honda Motor Co.*, 302 Mich. App. 113, 134 (2013). Accordingly, Plaintiffs' standalone claim for breach of the implied covenant (Count V) should be dismissed as not available under Michigan law. *See Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003) (affirming dismissal of breach of implied covenant claim because "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing").

## III. The Court Should Dismiss the Fraud Claim

Plaintiffs' common-law fraud claim (Count III) fails for two independent reasons. *First*, the claim as to CVS Specialty impermissibly recasts the asserted breach of contract as "fraud," since Plaintiffs do not allege a violation of a legal duty separate and distinct from CVS Specialty's asserted contractual duty. *Second*, as to all Defendants, the claim is not pleaded with particularity as Rule 9(b) demands.

### A. Plaintiffs Impermissibly Recast the Contract Claim as "Fraud"

"Michigan courts—and federal courts applying Michigan law—have long held that breach of a contract, even if done in bad faith, does not give rise to a separate and independent tort claim." *Home Owners Ins. Co. v. ADT LLC*, 109 F.

Supp. 3d 1000, 1008 (E.D. Mich. 2015) (collecting cases). The reason: "The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise, the failure to meet a note or any other promise to pay money, would sustain a suit in tort for negligence, and thus the promissor be made liable for all the consequential damages arising from such failure." *Hart v. Ludwig*, 347 Mich. 559, 563 (1956). And while this principle arises in negligence, *see id.*, it applies to fraud as well, *see, e.g.*, *Home Owners*, 109 F. Supp. 3d at 1008 (dismissing fraud claim on this basis).

To state a claim for fraud, a plaintiff must identify "some tortious conduct wholly independent of the contractual breach." *Id.* And for conduct to be tortious, "the plaintiff must allege a violation of a legal duty separate and distinct from the contractual obligation." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 2017 WL 3116262, at *8 (E.D. Mich. July 21, 2017) (citation omitted) (dismissing fraud claim), *aff'd*, 146 F.4th 496 (6th Cir. 2025). When the plaintiff fails to allege an independent legal duty, "the cause of action arises merely from a breach of promise," and the action must proceed in contract—and contract alone. *See Hart*, 347 Mich. at 563 (dismissing negligence claim); *see also Home Owners*, 109 F. Supp. 3d at 1007–08 (dismissing contract claim as time-barred and then dismissing fraud claim for lack of independent duty).

Plaintiffs' fraud claim identifies no duty (e.g., a fiduciary duty, a duty of care,

etc.) supposedly owed to Plaintiffs other than one arising from their contracts with CVS Specialty. The alleged "fraud" is that Defendants, including CVS Specialty, falsely "represented to Plaintiffs that all reimbursement obtained by Defendants from all sources . . . would pass to Plaintiffs" and that "the amount paid to Plaintiffs was the total amount received." Compl. ¶¶ 200, 204. This allegation simply means Defendants failed to fulfill a (purported) contractual commitment "relating to the remittance of all reimbursement obtained by Defendants from all sources." *Id.* ¶ 172; *see also id.* ¶ 178(1) (similar).

Plaintiffs, in short, merely "allege[] that Defendants failed to perform a contractual promise" and "concealed their non-performance of contract." *Home Owners*, 109 F. Supp. 3d at 1008. That type of allegation does not state a fraud claim, *see id.*, as "there is no legal basis or duty separate from the contract that would permit plaintiff to plead fraud," *Grand Traverse*, 2017 WL 3116262, at *8 (dismissing fraud claim); *see Leonor v. Provident Life & Acc. Co.*, 2013 WL 1163375, at *2–3 (E.D. Mich. Mar. 20, 2013) (dismissing claim based on alleged "misrepresent[ation] that Plaintiff would receive benefits," because it "ar[ose] solely from Defendants' contractual obligation to pay Plaintiff").

**B. Fraud Is Not Pleaded with Particularity**

"In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This rule serves "[t]o provide

defendants with notice of the misconduct alleged, and to prevent plaintiffs from speculatively rummaging through defendants' affairs without adequate cause." *Voutsiotis v. PNC Bank, NA*, 178 F.4th 951, 960 (6th Cir. 2026) (affirming dismissal). "A complaint satisfies that standard when it alleges (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* (citation omitted). "Moreover, where there are multiple defendants, such as here, a claim must identify who made the alleged misrepresentations." *Hanning v. Homecomings Fin. Networks*, 436 F. Supp. 2d 865, 870 (W.D. Mich. 2006) (dismissing claim). It is not enough to "identif[y] relationships between various of the defendants" and then "articulate[] general averments of fraud attributed to the defendants." *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming dismissal).

The Complaint falls well short of these standards. It does not identify a single speaker of any allegedly false statement, the date(s) on which any particular false statement was supposedly made, any contextual facts around any discussion in which a false statement was supposedly made, or the name of anyone within Plaintiffs' organizations who heard or received the supposedly false statement. By way of example only, concerning perhaps the most key representation underlying Plaintiffs' theory—that Plaintiffs would receive "all revenues the PBM receives from insurance carriers and other third-party payors for the 340B-discounted drugs

dispensed, minus a dispensing fee"—the Complaint alleges nothing whatsoever concerning the who/where/when/why of that alleged statement. Compl. ¶ 6; *see also id.* ¶¶ 199, 203 (same). The Court should dismiss Plaintiffs' fraud claim under Rule 9(b). *See, e.g.*, *Voutsiotis*, 178 F.4th at 960 (affirming dismissal where complaint "never identifie[d] 'the time, place, and content' of a single false representation"); *Hoover*, 958 F.2d at 745 (dismissing claim where plaintiffs "allege[d] misrepresentations without sufficiently identifying which defendants made them").

## IV. The Court Should Dismiss the Tortious Interference with Contract Claim

Plaintiffs assert a tortious interference with contract claim against all Defendants. Compl. ¶ 240. "Under Michigan law, tortious interference with a contract or contractual relations is an intentional tort requiring proof of (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Gucwa v. Lawley*, 731 F. App'x 408, 415 (6th Cir. 2018) (quoting *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 280 (2013)). The Complaint's allegations fail to state such a claim for four independent reasons.

*First*, there is no well-pled breach of contract for the reasons discussed in Part I.B. *See supra* pp. 12–18; *Rollison v. Kingsbury*, 2015 WL 4389767, at *1 (Mich. Ct. App. July 16, 2015) (dismissing claim on this basis); *see also Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 312–13 (1992).

*Second*, Plaintiffs cannot state a tortious interference claim against CVS

Health, CaremarkPCS Health, or Wellpartner because they are all entities within the same corporate family of a party whose contract was allegedly interfered with: CVS Specialty. Compl. ¶¶ 76, 81. Entities within the same corporate family cannot tortiously interfere with each other's contracts. *See, e.g.*, *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 783 (6th Cir. 2019) ("Under Michigan law, a parent company cannot tortiously interfere with the affairs of its wholly-owned subsidiary."); *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 396–97 (E.D. Mich. 2000). Moreover, only a "third party" to the contract can be liable for tortious interference with contract, and entities within one corporate family are not true "third-part[ies]." *See Willis*, 123 F. Supp. 2d at 396. Nor can Plaintiffs possibly allege that CVS Specialty—the contracting party—was a third party. *See Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 781 (E.D. Mich. 2010) ("[A] person who is a party to a contract cannot logically 'interfere' with it."). Based on these rationales, the Court should dismiss the claim.

*Third*, Plaintiffs have not alleged facts establishing that each of CVS Health, CaremarkPCS Health, and Wellpartner possessed the requisite intent and improper purpose: that they acted for the purpose of causing CVS Specialty to breach its contract with Plaintiffs. A plaintiff must "allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law *for the purpose of* invading the contractual rights" of another. *Derderian v. Genesys Health*

*Care Sys.*, 263 Mich. App. 364, 382 (2004); *see also Dalley v. Dykema Gossett*, 287 Mich. App. 296, 323 (2010) ("[A] plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification."). Allegations that show "nothing more than a breach of contract" are insufficient to establish the "separate tort of tortious interference." *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 326 (6th Cir. 2014). Nor is it enough to allege "purposeful or knowing behavior on the part of the defendant." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018). It is thus insufficient to allege, as Plaintiffs do, that (1) these Defendants *knew CVS Specialty contracted* with Plaintiffs and (2) *a foreseeable result* of paying CVS Specialty less than insurance companies paid the PBM was that Plaintiffs themselves would receive a smaller share of 340B dollars.

Instead, a plaintiff must allege that the defendant's conduct was "intentional," meaning that the "conduct [must have] unjustifiably instigated or induced a breach of contract." *Auburn Sales*, 898 F.3d at 716 (quoting *Knight Enters.*, 299 Mich. App. at 281). And plaintiff must also show that the conduct was "improper," meaning "conduct that [was] either (1) wrongful *per se*; or (2) lawful, but done with malice and unjustified in law." *Id.* (emphasis in original) (quoting *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010)). Plaintiffs make no such allegation. To say that "Defendants . . . implement[ed] and execut[ed] the

discriminatory 340B pricing scheme . . . *which caused* . . . CVS Specialty to breach [its] obligations" is merely to allege *the effect* of the arrangement. Compl. ¶ 244. But that is not saying *the purpose and objective* of the arrangement was to place CVS Specialty in violation of its contracts with Plaintiffs, the third *prima facie* element for tortious interference. *See Knight Enters.*, 299 Mich. App. at 282 (holding that tortious interference claim failed where plaintiff did not show that defendant instigated or intentionally induced the breach, and noting "[i]t generally does not constitute improper interference with a contract if a defendant simply takes the initiative to gain an advantage over the competition" (citation omitted)).

## V. The Court Should Dismiss the Unjust Enrichment Claim

Plaintiffs' unjust enrichment claim should be dismissed for two reasons.

*First*, Plaintiffs fail to allege that they conferred any benefit upon Defendants. In order to adequately plead an unjust enrichment claim, a plaintiff must show a "(1) receipt of a benefit by Defendant from Plaintiff, and (2) an inequity resulting to Plaintiff because of Defendant's retention of the benefit." *Akinwusi v. Fed. Home Loan Mortg. Corp.*, 2013 WL 1282018, at *6 (E.D. Mich. Mar. 27, 2013) (quoting *Belle Isle Grill*, 256 Mich. App. at 478). These elements require the plaintiff to show that *it conferred* a benefit upon the *defendant*, and that the defendant retained that benefit without adequate compensation to the plaintiff. *See Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 23 (2012) (dismissing unjust enrichment claim

where "plaintiff ha[d] not shown that he conferred a benefit to [defendant]"). Here, Plaintiffs have not identified any benefit that *they conferred* on Defendants—they instead allege that Defendants "obtained for themselves benefits" from other parties, namely, insurance companies. Compl. ¶ 237. The insurers are entities who make payments to the PBM, CaremarkPCS Health, *id.* ¶ 88, and Plaintiffs claim those payments were not sufficiently passed along through the chain of transactions down to it, *see id.* ¶ 6, and that ended up "enriching" the PBM.

*Second*, because Plaintiffs concede the existence of a valid express contract, an unjust enrichment claim cannot lie. "A party cannot recover under a theory of quantum meruit . . . when there is an express contract between the parties that addresses the same subject matter." *Dan's Excavating, Inc. v. Mich. Dep't of Transp.*, 2024 WL 1597625, at *5 (Mich. Ct. App. Apr. 11, 2024). Plaintiffs say they plead unjust enrichment "[i]n the alternative" to their contract claim. Compl. ¶ 237. But "[c]ourts have regularly rejected plaintiffs' attempts to plead an unjust enrichment claim in the alternative where, as here, there is no dispute that an express contract covers the same subject matter." *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019) (collecting cases). There is no such dispute here; the Complaint affirmatively alleges that there was "a valid contract between Plaintiffs and . . . CVS Specialty, which governs the relationship between the Parties." Compl. ¶ 170. Plaintiffs thus fail to plead an

unjust enrichment claim. *See Heaton v. Bank of Am. Corp.*, 2011 WL 3112325, at *5 (E.D. Mich. July 26, 2011); *Belle Isle Grill*, 256 Mich. App. at 478–79.

## VI. The Court Should Dismiss the RICO Claim

The Court should dismiss Plaintiffs' RICO claim because Plaintiffs impermissibly recast their contract claim, do not allege a RICO "enterprise," and do not sufficiently allege the predicate acts.

### A. Plaintiffs Cannot Recharacterize Their Contract Claims as a RICO Claim

"It is insufficient . . . to transmute claims sounding in contract into RICO claims by simply appending the terms false and fraudulent." *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 777 (E.D. Mich. 2010) (citation omitted). But that is precisely what Plaintiffs do here. The Complaint characterizes the alleged breach of contract—"not remitting all payments made to CaremarkPCS at the point-of-sale for 340B drugs to Plaintiff[]"—as also being a RICO violation. Compl. ¶ 177(1); *see id.* ¶ 221 (alleging RICO violations based on "the difference between the point-of-sale adjudicated amount and the lower 340B reimbursement"); *see also Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 1988 WL 156334, at *2 (N.D. Ohio Nov. 30, 1988) ("The most troublesome aspect of the issue before the Court is that defendants' alleged liability under RICO is predicated solely on the claim of a breach of a lawful contract between corporations."). Because the RICO claim alleged by Plaintiffs is simply a restatement of their contract claims, the Court should

dismiss the RICO claim.

### B. Plaintiffs Do Not Plausibly Allege a RICO "Enterprise"

In RICO cases, "a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). A RICO plaintiff must describe in its pleading a "person" for RICO purposes that is separate and distinct from the "enterprise." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989). "An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). Thus, "a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members." *Shields v. UnumProvident Corp.*, 415 F. App'x 686, 691 (6th Cir. 2011).

Plaintiffs fail to allege an enterprise separate and distinct from the Defendants. According to Plaintiffs, "CVS Health, CaremarkPCS, Caremark LLC, CVS Specialty, and WellPartner" constitute an "association-in-fact enterprise." Compl. ¶ 211. Plaintiffs also allege Defendants are "vertically integrated" and that "CVS Health exercised common ownership and control over the other Defendants, who are

wholly owned subsidiaries of CVS Health." *Id.* ¶¶ 3, 9, 33. Thus, Plaintiffs cast both the parent (CVS Health) and its vertically integrated subsidiaries (the other Defendants) as the "persons" committing the predicate acts and the "enterprise" itself—which is what the law prohibits. Because Plaintiffs do not allege a cognizable "enterprise," Plaintiffs fail to state a claim.

### C. Plaintiffs Fail to Adequately Plead Predicate Acts

A RICO plaintiff must also allege "two or more predicate racketeering offenses." *Grow Mich.*, 50 F.4th at 594. Here, Plaintiffs say three predicate acts exist: (1) embezzlement from employee benefit plans in violation of 18 U.S.C. § 664, (2) kickbacks concerning employee welfare pension and benefit plans in violation of 18 U.S.C. § 1954; and (3) wire fraud in violation of 18 U.S.C. § 1343. Compl. ¶¶ 214–28. But Plaintiffs do not sufficiently allege that the first two predicate acts *caused* their injury, and Plaintiffs fail to state *plausibly and with particularity* any of the three predicate acts.

#### 1. Plaintiffs Suffered No Injury from Two Alleged Predicate Acts

A civil RICO claim requires injury to the plaintiff "by reason of" a RICO violation. 18 U.S.C. § 1964(c). The defendant's violation thus must be the "but for" and "proximate cause" of the plaintiff's injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Critically, "the question . . . is not whether defendants' *conduct as a whole* directly caused plaintiff's injury, but whether the *specific RICO*

*predicate acts* alleged to have been committed by defendants directly caused plaintiff's injury." *Empire Merchants, LLC v. Reliable Churchill LLP*, 2017 WL 5559030, at *17 (E.D.N.Y. Mar. 16, 2017) (emphasis in original), *aff'd*, 902 F.3d 132 (2d Cir. 2018); *accord Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012). Where a third party was more directly harmed, however, courts commonly refuse to go "beyond the first step" in the causal chain, and dismiss a RICO claim. *See, e.g.*, *General Motors LLC v. FCA US LLC*, 2020 WL 3833058, at *10 (E.D. Mich. July 8, 2020), *aff'd*, 44 F.4th 548 (6th Cir. 2022).

Here, Plaintiffs allege that Defendants somehow (1) embezzled from employee benefit plans that were clients of CaremarkPCS Health, the PBM. *See* Compl. ¶¶ 214–15; *supra* p. 5 (explaining the insurer-to-PBM relationship). Plaintiffs then claim that Defendants somehow (2) accepted kickbacks that exceeded the "fair market value of the Contract Pharmacy services rendered in relation to the administration of Plaintiffs' 340B program." Compl. ¶ 218. In both instances, the party "directly harmed" by these alleged wrongs is not Plaintiffs (hospitals), but the employee plans providing coverage to Plaintiffs' patients—either because their funds were allegedly misappropriated (embezzlement) or used contrary to the plan's benefit rules based on an inducement (kickback). Because Plaintiffs were not directly harmed, they lack RICO causation and thus fail to state a claim. *See, e.g.*, *Grow Mich.*, 50 F.4th at 595–96 (distinguishing between "first level" of injury and

the party that "suffers only because he has a claim against" the injured party).

### 2. Plaintiffs Do Not Allege Any Predicate Act with Particularity

Plaintiffs must plead predicate facts underlying a claim of fraud or embezzlement with the particularity under Rule 9(b). *See Matsumara v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251–52 (S.D.N.Y. 2008). They do not do so.

***Embezzlement.*** A violation requires the defendant to have (1) embezzled, stole, or converted (2) "money from an ERISA employee benefits plan" (3) "for 'his own use or . . . the use of another.'" *United States v. Whitfield*, 663 F. App'x 400, 407 (6th Cir. 2016) (quoting 18 U.S.C. § 664). The defendant must have "specific intent to deprive the plan of its funding." *Id.* Plaintiffs plead none of these required elements, devoting a mere three paragraphs in the Complaint to Section 664, Compl. ¶¶ 214–16, asserting in conclusory fashion only that Defendants violated Section 664 by "steering and diverting" 340B funds, *id.* ¶ 216. That is plainly insufficient under Rule 9(b). *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 264 (S.D.N.Y. 2011) (applying Rule 9(b) to 18 U.S.C. § 664). Plaintiffs do not identify what funds were diverted, when, by whom, why it was unlawful, or which plan's funds they were in the first place. This last point is key, because a Section 664 offender must take or misappropriate property of ERISA-covered "benefit plan funds" specifically. The Complaint vaguely says that "much of the reimbursement for 340B drugs come from self-funded employee benefit plans," Compl. ¶ 215,

without asserting that there were any benefit plan funds involved *in Plaintiffs' 340B transactions specifically*. That allegation is far too generic to establish a violation of Section 664.

***Kickbacks.*** 18 U.S.C. § 1954 prohibits (1) a person who provides benefit plan services to (2) an employee welfare benefit plan or employee pension benefit plan from (3) receiving or soliciting any [4] fee, kickback, commission, gift, loan, money, or thing of value (5) because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to such plan. *See* 18 U.S.C. § 1954. Paragraph 218 of the Complaint represents the totality of Plaintiffs' factual allegations concerning why Section 1954 was supposedly violated. It is plainly inadequate. For example, neither that paragraph nor any other establishes that any payment a Defendant received constituted a "kickback" as opposed to a "bona fide . . . payment[]" (received by CaremarkPCS Health from its insurer-clients for providing PBM services under their contracts), which would fall outside the statute's plain terms. 18 U.S.C. § 1954. Similarly, no allegations suggest that any payments to a Defendant were made "because of" or "with the intent to" improperly influence how that Defendant administered an employee welfare or pension benefit plan, *id.*; there is no allegation that any Defendant was in cahoots with employee welfare or pension plans. Further, "the statute targets *individual* conduct, not any organization." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520, 547 (E.D.N.Y.

2008). Plaintiffs do not allege any individual violated Section 1954, and a corporate defendant cannot violate the statute. *Id.*

***Wire Fraud.*** To allege a RICO wire fraud predicate, Plaintiffs must plead "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *Bloodstock Rsch. Info. Servs., Inc. v. Edbain.com, LLC*, 622 F. Supp. 2d 504, 513 (E.D. Ky. 2009) (citation omitted). There must be a material misrepresentation, *id.*, and the scheme must be pled with particularity under Rule 9(b), *Riley v. Phoenix Cmty Cap.*, 827 F. Supp. 3d 1029, 1049 (M.D. Tenn. 2026). Plaintiffs fail to allege such a scheme with adequate particularity.

*First*, the so-called "fraud" is functionally CVS Specialty's alleged breach of contract, but re-alleging the facts underlying a claim for breach of contract and alleging the mail or wires were used does not convert an alleged breach of contract into an alleged RICO predicate act. *See C & L Ward Bros, Co. v. Outsource Sols., Inc.*, 2012 WL 3157005, at *5 (E.D. Mich. Aug. 3, 2012). The mere "act of breaching a contract is insufficient to support a mail or wire fraud claim." *Griffin v. NBD Bank*, 43 F. Supp. 2d 780, 790 (W.D. Mich. 1999).

*Second*, Plaintiffs fail to plead a fraudulent scheme with particularity under Rule 9(b). Paragraph 221 is its only attempt to do so. Its subparts relating to "CaremarkPCS Electronic Claims Rate Reduction Transmissions" and "Internal

Coordinating Electronic Communications" do not allege that any information contained in the documents was factually inaccurate. Compl. ¶ 221. The remaining subpart alleges that the Wellpartner Monthly Electronic Reports "falsely reflected a gross insurance payment to CVS Specialty that was materially less than the amount actually adjudicated and paid by the applicable payor at the point of sale, and falsely reflected a patient co-pay/co-insurance amount of $0.00 on the majority of claims." *Id.* But Plaintiffs fail to plead any factual support showing that Wellpartner's reports purported to reflect the amount "paid by the applicable payor," rather than the reimbursement received by CVS Specialty. The $0.00 patient payment amounts have no nexus whatsoever to Plaintiffs' theory of wrongdoing in this case: the underpayment of Plaintiffs by CVS Specialty. That alleged misstatement therefore cannot have been material to Plaintiffs, and the Complaint contains no well-pled facts showing it *was* material. It therefore fails to allege a fraudulent scheme. Furthermore, Plaintiffs' allegation regarding the $0.00 patient payment amounts is conclusory; it does not contain the who, what, when, where, why required by Rule 9(b). *Riley*, 827 F. Supp. 3d at 1046.

## VII. The Court Should Dismiss the Michigan Consumer Protection Claim

The Michigan Consumer Protection Act claim fails for two independent reasons: (1) this case challenges a business arrangement, not consumer transactions, and (2) the Complaint does not identify a specific subsection of the MCPA that any

Defendant allegedly violated—because no subsection could possibly apply.

*First*, "[t]he MCPA does not apply to purchases that are primarily for business purposes." *Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691, 712 (E.D. Mich. 2022) (citing Mich. Comp. Laws. § 445.902(1)(g)). That is because "[t]he intent of the act is to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 271 (1999). By contrast, Plaintiffs purchased contract pharmacy services from CVS Specialty in Plaintiffs' capacity as hospitals—i.e., "primarily for the purpose of operating [its] business." *Jackson Cnty. Hog Producers v. Consumers Power Co.*, 234 Mich. App. 72, 84 (1999) (dismissing claim). This is thus a contract dispute between sophisticated businesses, not a dispute over any improper interactions with consumers. The principal output of the arrangement for which Plaintiffs contracted—340(b) savings—is not sufficient to state a claim under the MCPA because a business's lost revenues are not actionable. *See Moukalled v. Minn. Mut. Life Ins. Co.*, 2002 WL 31008839, at *8 (E.D. Mich. Aug. 19, 2022) (dismissing claim where "transaction at issue occurred between two businesses"); *Robertson v. State Farm Fire & Cas. Co.*, 890 F. Supp. 671, 679 (E.D. Mich. 1995) ("it would be rare indeed (if even possible) for a corporation" to make a purchase for personal, family, or household purposes). This Court should dismiss the MCPA claim as it is based on business, not consumer, use.

*Second*, to state a claim, an MCPA plaintiff must allege a violation of a specific enumerated subsection of the statute. Plaintiffs do not do this.

The MCPA declares that "[u]nfair, unconscionable, or deceptive methods, acts, or practices" are "unlawful and *are defined as follows*," and proceeds to list 37 specific acts prohibited by the statute. Mich. Comp. Laws. § 445.903(1). If a defendant's conduct is not within one of those 37 prohibited conduct, it is not within the ambit of the statute.[7] Failure to identify a specific prohibited act is fatal to a plaintiff's MCPA claim. *See Innovation Ventures, LLC v. N.V.E., Inc.*, 747 F. Supp. 2d 853, 867 (E.D. Mich. 2010) (dismissing MCPA claim that did not identify a prohibited act under which it was pled); *Jones v. U.S. Dept. of Educ.*, 2017 WL 9471877, at *11 (E.D. Mich. Feb. 12, 2017) ("[T]he MCPA contains multiple subsections pertaining to specific, prohibited conduct. . . . Plaintiff fails to identify any applicable MCPA statutory subsections under which she brings such a claim."). Here, the Complaint does not identify any specific prohibited act supporting its claim. Moreover, it is apparent that none of the 37 categories could apply here.

## VIII. The Court Should Dismiss All Claims Against the Holding Company CVS Health Corporation

"[D]eeply ingrained in our economic and legal systems" is the principle that

---

[7] Although the Michigan Attorney General is empowered to promulgate rules to enforce the prohibited acts enumerated by the statute, it cannot enlarge the scope of prohibited acts. *See* Mich. Comp. Laws § 445.903(2). Plaintiffs do not explain why they can do via this lawsuit what even the Michigan Attorney General may not do.

"a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted); *see Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007). Instead, "each individual defendant must be appraised separately of the specific acts of which he is accused, especially in a case involving multiple defendants." *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981).

At a minimum, the Complaint does not do so for CVS Health, a holding company. The Complaint does not, for example, describe any specific wrongful act by CVS Health, merely emphasizing its ownership of the other Defendants. *See, e.g.*, Compl. ¶ 161. The only specific factual allegation concerns an SEC filing about the importance of 340B-related revenue. *Id*. ¶¶ 21, 223. But Plaintiffs do not connect that SEC filing with the alleged scheme, nor otherwise allege that the filing was inaccurate, misleading, or wrongful. *See In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 758 (N.D. Ohio 2003) (dismissing complaint when it failed to explain how statements in SEC filings were false). As other courts have done at the pleadings stage, this Court should dismiss CVS Health. *See, e.g.*, *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732, at *3–4 (W.D.N.C. Feb. 25, 2022) (detailing that CVS Health is a holding company without operations and dismissing the entity); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979-81

(N.D. Cal. 2016); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *3-4 (D. Mass. Mar. 13, 2020).

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: August 7, 2026

Respectfully submitted,

/s/ *Roger P. Meyers*

Roger P. Meyers
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (248) 822-7844
Facsimile: (248) 822-7000
meyers@bsplaw.com

Grant A. Geyerman
Joseph S. Sandoval-Bushur
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024

Telephone: (202) 434-5000
Facsimile: (202) 434-5029
ggeyerman@wc.com
jsandoval-bushur@wc.com

*Attorneys for Defendants CVS Health Corp., CaremarkPCS Health, LLC, Caremark, LLC, and Wellpartner, LLC*