**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

HENRY FORD HOSPITAL, HENRY FORD HEALTH JACKSON HOSPITAL, HENRY FORD ST. JOHN HOSPITAL, and HENRY FORD HEALTH WYANDOTTE HOSPITAL,

*Plaintiffs,*

v.

CVS HEALTH CORPORATION; CAREMARKPCS HEALTH, LLC; CAREMARK, L.L.C.; WELLPARTNER, LLC; and JOHN DOES 1-15,

*Defendants.*

Case No. 2:26-cv-12435
Hon. Susan K. DeClercq
Hon. Curtis Ivy, Jr.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs Henry Ford Hospital, Henry Ford Health Jackson Hospital, Henry Ford St. John Hospital, and Henry Ford Health Wyandotte Hospital ("Plaintiffs"), by and through their undersigned counsel, hereby respond in opposition to the Motion to Dismiss Plaintiffs' Complaint, ECF No. 19, filed by CVS Health Corporation, CaremarkPCS Health, LLC, Caremark, L.L.C., and Wellpartner, LLC (collectively, "Defendants").

WHEREFORE, for the reasons set forth in the accompanying brief, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**FRIER LEVITT, LLC**

*/s/ Matthew J. Modafferi*
Matthew J. Modafferi
Jonathan E. Levitt

One World Trade Center
Suite 45E
285 Fulton Street
New York, NY 10007
Telephone: (646) 970-2711

84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Facsimile: (973) 618-0650

*Attorneys for the Plaintiffs*

Dated: August 27, 2026

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HENRY FORD HOSPITAL, HENRY FORD HEALTH JACKSON HOSPITAL, HENRY FORD ST. JOHN HOSPITAL, and HENRY FORD HEALTH WYANDOTTE HOSPITAL,<br><br>*Plaintiffs,*<br><br>v.<br><br>CVS HEALTH CORPORATION; CAREMARKPCS HEALTH, LLC; CAREMARK, L.L.C.; WELLPARTNER, LLC; and JOHN DOES 1-15,<br>*Defendants.* | Case No. 2:26-cv-12435<br>Hon. Susan K. DeClercq<br>Hon. Curtis Ivy, Jr. |

**BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## CONCISE STATEMENT OF ISSUES PRESENTED

1. **Should the Court deny Defendants' motion to dismiss the breach-of-contract claims because the Agreements expressly bind Caremark LLC and its affiliates and, in any event, CVS Health, CaremarkPCS, and Wellpartner are alter egos of Caremark LLC and/or manifest their intent to be bound by performing services and accepting benefits under the Agreements?**

   Plaintiffs say: Yes.
   Defendants say: No.
   This Court should answer: Yes.

2. **Should the Court deny Defendants' motion to dismiss the breach-of-contract claims because Plaintiffs sufficiently identify the contractual provisions Defendants breached in satisfaction of Rule 8's notice-pleading standard?**

   Plaintiffs say: Yes.
   Defendants say: No.
   This Court should answer: Yes.

3. **Should the Court deny Defendants' motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count V) because Plaintiffs do not assert a standalone claim, but rather plead breach of contract based on Defendants' bad-faith exercise of contractual obligations?**

   Plaintiffs say: Yes.
   Defendants say: No.
   This Court should answer: Yes.

4. **Should the Court deny Defendants' motion to dismiss Plaintiffs' fraud claim (Count III) because Plaintiffs do not impermissibly recast their contract claim as fraud, but instead alleges misrepresentations extraneous to the Agreements and pleads those misrepresentations with the particularity required by Rule 9(b)?**

   Plaintiffs say: Yes.

Defendants say: No.
This Court should answer: Yes.

5. **Should the Court deny Defendants' motion to dismiss Plaintiffs' tortious interference with contract claim (Count VII) because Plaintiffs plausibly allege intentional interference through wrongful means and for an improper purpose sufficient to defeat any corporate privilege?**

Plaintiffs say: Yes.
Defendants say: No.
This Court should answer: Yes.

6. **Should the Court deny Defendants' motion to dismiss Plaintiffs' unjust enrichment claim (Count VI) because Plaintiffs plausibly allege that they conferred a benefit on Defendants and properly pleads unjust enrichment in the alternative?**

Plaintiffs say: Yes.
Defendants say: No.
This Court should answer: Yes.

7. **Should the Court deny Defendants' motion to dismiss Plaintiffs' Michigan Consumer Protection Act claim (Count II) because the Agreements facilitate delivery of drugs to individual patients and Plaintiffs identify specific prohibited acts, including material misrepresentation and concealment?**

Plaintiffs say: Yes.
Defendants say: No.
This Court should answer: Yes.

8. **Should the Court deny Defendants' motion to dismiss Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act (Count IV) because Plaintiffs viably allege fraud independent of the contract claim, a cognizable association-in-fact enterprise, and pleads predicate acts with the particularity required by Rule 9(b)?**

Plaintiffs say: Yes.
Defendants say: No.
This Court should answer: Yes.

9. **Should the Court deny Defendants' motion to dismiss the claims against CVS Health because Plaintiffs plead sufficient facts plausibly establishing CVS Health's direct involvement in and responsibility for the alleged 340B pricing scheme, or, in the alternative, CVS Health's alter ego liability?**

   Plaintiffs say: Yes.
   Defendants say: No.
   This Court should answer: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Preamble**

- Fed. R. Civ. P. 12(b)(6)
- *Atkins v. Unknown Henning*, 2024 U.S. Dist. LEXIS 44005, at *2 (W.D. Mich. Mar. 13, 2024)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
- I*n re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1027 (E.D. Mich. 2003)
- *M.S. Willman v. AG of the United States*, 972 F.3d 819, 823 (6th Cir. 2020)

**Section I. Plaintiffs' Contract Claims Are Properly Asserted Against All Defendants**

- *Gardner v. Flagstar Bank, FSB*, 2021 WL 3772866, at *5 (E.D. Mich. Aug. 23, 2021)
- *Dutton Partners, LLC v. CMS Energy Corp.*, 802 N.W.2d 717, 722 (Mich. Ct. App. 2010)
- *Great Lakes Acquisition Corp. v. Roncelli*, 2021 Mich. Cir. LEXIS 718, at *7–8 (Mich. 6th Jud. Cir. Ct. Sept. 28, 2021)
- *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)
- *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006
- *People ex rel. Attorney General v. Mich. Bell Tel. Co.*, 224 N.W. 438, 440 (Mich. 1929)
- *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 799 (6th Cir. 2007)
- MCL § 550.926
- 5 Fed. Reg. 10272 (Mar. 5, 2010 Final Notice)

**Section II. Plaintiffs' Audit-Related Contract Claim Complies with Notice Pleading**

- *Colorado v. Trump*, 823 F. Supp. 3d 1251, 1278–79 (D. Colo. 2026)
- *Luxury Limousine, Inc. v. Nat'l Indem. Co.*, 2019 LX 32111, at *4 (E.D. Mich. Aug. 7, 2019)
- Fed. R. Civ. P. 8(a)(2)

**Section III. Plaintiffs Adequately Plead a Violation of the Implied Covenant**

- *Burkhardt v. City Nat'l Bank*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975)
- *Hammond v. United of Oakland*, 483 N.W.2d 652, 655 (Mich. App. 1992)

**Section IV. Plaintiffs State a Viable Claim for Fraud**

- *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)
- *Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 25 509 (6th Cir. 2007)
- *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 373-74 (1995)
- *Steel Strip Wheels, Ltd. v. General Rigging, LLC*, 2009 U.S. DIST LEXIS 90407, at *35 n.6 (E.D. Mich. 2009)

**Section V. Plaintiffs State a Viable Claim for Tortious Interference with Contract**

- *Knight Capital Partners Corp. v. Henkel AG & Co.*, 30 F.3d 775, 783 (6th Cir. 2019)
- Fed. R. Civ. P. 8(d)(2)-(3)

**Section VI. Plaintiffs Plausibly Allege a Claim for Unjust Enrichment**

- *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195–200 (2006)

**Section VII. Plaintiffs Adequately Plead RICO Violations**

- *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 884-85 (6th Cir. 1990)
- *Schmuck v. United States*, 489 U.S. 705, 711-12 (1989)
- *West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 492-93 (6th Cir. 2013)
- 18 U.S.C. § 1954

**Section VIII. The Court Should Not Dismiss the MCPA Claim**

- Mich. Comp. Laws §§ 445.911(2), 445.902(1)(d), 445.903
- *Mannion v. Henry Elec., LLC*, 2026 U.S. Dist. LEXIS 17633, at *26 (E.D. Mich. Jan. 29, 2026)
- *Progressive Distrib. Servs. v. UPS*, 39 186 F. Supp. 3d 741, 756 (W.D. Mich. 2016)

- *Slobin v. Henry Ford Health Care*, 469 Mich. 211, 217 (2003)
- *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 272 (Mich. Ct. App. 1999)

**Section IX. The Complaint Aptly Alleges CVS Health's Direct Participation**

- *U.S. v. Bestfoods*, 524 U.S. 51, 65 (1998)

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................1

A. The Agreements and Relevant Provisions ....................................................3

B. Vertical Integration Was Necessary for Defendants' Pricing Scheme .........4

C. Plaintiffs' Audit Demand and Defendants' Retaliatory Termination ...........7

ARGUMENT ..........................................................................................................8

I. Plaintiffs' Contract Claims Are Properly Asserted Against All Defendants 8

A. CaremarkPCS, Wellpartner, and CVS Health Are Parties to the Agreements ..........................................................................8

B. CaremarkPCS, Wellpartner, and CVS Health Are Alter Egos of CVS Specialty ..........................................................................11

C. Plaintiffs Adequately Identify the Contractual Provisions Breached ..........................................................................12

D. Defendants Breached Their Promise to Comply with HRSA/OPA Guidelines..........................................................................13

E. Defendants Breached the Contractual Obligation to Comply with Michigan's 340B Pricing Law ..........................................15

*i.* *Plaintiffs are suing for breach of an express contractual promise, not an implied statutory right*..........................................................................15

*ii.* *Plaintiffs plausibly allege conduct covered by Section 550.926* ...........16

II. Plaintiffs' Audit-Related Contract Claim Complies with Notice Pleading 16

III. Plaintiffs Adequately Plead a Violation of the Implied Covenant ..............18

A. The Implied Covenant Claim Sounds in Contract7F............18

IV. Plaintiffs State a Viable Claim for Fraud.......................................................20

V. Plaintiffs State a Viable Claim for Tortious Interference with Contract ...23

A. Plaintiffs Adequately Pled a Breach.........................................23

B. Defendants' Corporate Relationship Does Not Negate the Claim ..........................................................................24

C. Plaintiffs Plausibly Allege Intentional and Improper Interference ....26

VI. Plaintiffs Plausibly Allege a Claim for Unjust Enrichment ....27

VII. Plaintiffs Adequately Plead RICO Violations ....29

A. Plaintiffs May Pursue RICO Alongside Contract Claims ....29

B. Plaintiffs Have Properly Alleged a RICO Enterprise ....31

C. Plaintiffs Adequately Plead Predicate Acts ....32

*i. Defendants' Violations of §§ 664 and 1954 Caused Plaintiffs' Injury* ....32

*ii. Plaintiffs Have Sufficiently Pled Each Predicate Act* ....33

VIII. The Court Should Not Dismiss the MCPA Claim ....37

IX. The Complaint Aptly Alleges CVS Health's Direct Participation ....39

CONCLUSION ....40

## TABLE OF AUTHORITIES

### CASES

*Acrisure, LLC v. Hudak*,
618 F. Supp. 3d 642 (W.D. Mich. 2022) ....................18

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
176 F.3d 315 (6th Cir. 1999) ....................22

*Ajuba Int'l, LLC v. Saharia*,
871 F. Supp. 2d 671 (E.D. Mich. 2012) ....................28

*AMA v. United Healthcare Corp.*,
588 F. Supp. 2d 432 (S.D.N.Y. 2008) ....................34

*Aragonite Capital Mkts., LLC v. Dark Horse Media, LLC*,
2023 U.S. Dist. LEXIS 53193 (N.D. Ohio Mar. 28, 2023) ....................9

*Atkins v. Unknown Henning*,
2024 U.S. Dist. LEXIS 44005 (W.D. Mich. Mar. 13, 2024) ....................8

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
898 F.3d 710 (6th Cir. 2018) ....................27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 7, 13

*Belle Isle Grill Corp. v. Detroit*,
666 N.W.2d 271 (Mich. Ct. App. 2003) ....................18

*Bledsoe v. Cmty. Health Sys.*,
501 F.3d 493 (6th Cir. 2007) ....................23

*Boyle v. U.S.*,
556 U.S. 938 (2009) ....................31

*Broder v. Cablevision Sys. Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004) ....................14

*Burkhardt v. City Nat'l Bank*,
226 N.W.2d 678 (Mich. Ct. App. 1975) ....................................................................19

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ..............................................................................................32

*Colorado v. Trump*,
823 F. Supp. 3d 1251 (D. Colo. 2026) ......................................................................17

*Composite Techs., L.L.C. v. Inoplast Composites SA DE CV*,
925 F. Supp. 2d 868 (S.D. Ohio 2013) ............................................................ 12, 13

*Corrigan v. U.S. Steel Corp.*,
478 F.3d 718 (6th Cir. 2007) ........................................................................... 39, 40

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) ..................................................................................7

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
900 F.2d 882 (6th Cir. 1990) ..................................................................................30

*Doe v. BMG Sports, LLC*,
584 F. Supp. 3d 497 (S.D. Ohio 2022) ......................................................................13

*Dutton Partners, LLC v. CMS Energy Corp.*,
802 N.W.2d 717 (Mich. Ct. App. 2010) ............................................................ 11, 40

*Eagle Trim, Inc. v. Eagle-Picher Indus., Inc.*,
205 F. Supp. 2d 746 (E.D. Mich. 2002) ....................................................................31

*Frisch v. FCA US, LLC*,
2026 U.S. Dist. LEXIS 141394 (E.D. Mich. June 25, 2026) .................................. 9, 11

*Gardner v. Flagstar Bank, FSB*,
2021 U.S. Dist. LEXIS 158548 (E.D. Mich. Aug. 23, 2021) .....................................12

*Gorman v. Am. Honda Motor Co*,
839 N.W.2d 223 (Mich. Ct. App. 2013) ....................................................................18

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*,
2017 U.S. Dist. LEXIS 113759 (E.D. Mich. July 21, 2017) .......................................22

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) ....................14

*Grow Mich., LLC v. LT Lender, LLC*,
50 F.4th 587 (6th Cir. 2022) .................... 32, 33

*Hammond v. United of Oakland*,
483 N.W.2d 652 (Mich. App. 1992) ....................19

*Hart v. Ludwig*,
347 Mich. 559 (1956) ....................22

*Hennigan v. Gen. Elec. Co.*,
2010 U.S. Dist. LEXIS 103090 (E.D. Mich. Sept. 29, 2010) ....................28

*Home Owners Ins. Co. v. ADT LLC*,
109 F. Supp. 3d 1000 (E.D. Mich. 2015) ....................22

*Huron Tool & Eng'g Co. v. Precision Consulting Servs.*,
209 Mich. App. 365 (1995) ....................20

*In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*,
271 F. Supp. 2d 1007 (E.D. Mich. 2003) ....................8

*Johnson v. World All. Fin. Corp.*,
830 F.3d 192 (5th Cir. 2016) ....................14

*Keveligan v. Trott & Trott, P.C.*,
771 F. Supp. 2d 763 (E.D. Mich. 2010) ....................30

*Kircher v. Boyne USA, Inc.*,
2025 Mich. LEXIS 479 (2025) .................... 18, 19

*Kloian v. Domino's Pizza L.L.C.*,
733 N.W.2d 766 (Mich. Ct. App. 2006) ....................9

*Knight Capital Partners Corp. v. Henkel AG & Co.*,
30 F.3d 775 (6th Cir. 2019) ....................24

*Knight Enters., Inc. v. RPF Oil Co.*,
299 Mich. App. 275 (Mich. Ct. App. 2013) ....................26

*Leonor v. Provident Life & Accident Co.*,
2013 U.S. Dist. LEXIS 38423 (E.D. Mich. Mar. 20, 2013) ....................................22

*Liggett Rest. Grp. v. City of Pontiac, No. 256571*,
2005 Mich. App. LEXIS 2962 (Mich. Ct. App. Nov. 29, 2005) ...............................19

*Loweke v. Ann Arbor Ceiling & Partition Co., LLC*,
489 Mich. 157 (2011) ..............................................................................................30

*Luxury Limousine, Inc. v. Nat'l Indem. Co.*,
2019 LX 32111 (E.D. Mich. Aug. 7, 2019) ..............................................................17

*M.S. Willman v. AG of the United States*,
972 F.3d 819 (6th Cir. 2020) ......................................................................................7

*Mannion v. Henry Elec., LLC*,
2026 U.S. Dist. LEXIS 17633 (E.D. Mich. Jan. 29, 2026) .......................................39

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187–200 (2006) ...................................................................27, 28, 29

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
450 F. Supp. 2d 757 (E.D. Mich. 2006) ....................................................................12

*ParaData Comp. Networks, Inc. v. Telebit Corp.*,
830 F. Supp. 1001 (E.D. Mich. 1993) ........................................................................19

*People ex rel. Attorney General v. Mich. Bell Tel. Co.*,
224 N.W. 438 (Mich. 1929) .......................................................................................11

*Progressive Distrib. Servs. v. UPS*,
39 186 F. Supp. 3d 741 (W.D. Mich. 2016) ..............................................................38

*PTN-NRS, LLC v. Cnty. of Wayne,*
2017 Mich. App. LEXIS 1523 (Mich. Ct. App. Oct. 5, 2017) ...................................19

*Schmuck v. United States*,
489 U.S. 705 (1989) ..................................................................................................36

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*,
475 F.3d 783 (6th Cir. 2007) .....................................................................................11

*Slobin v. Henry Ford Health Care*,
469 Mich. 211 (2003) ....................................................................................38

*Speroni S.P.A. v. Perceptron, Inc.*,
12 Fed. Appx. 355 (6th Cir. 2001) ....................................................................24

*Steel Strip Wheels, Ltd. v. General Rigging, LLC*,
2009 U.S. DIST LEXIS 90407 (E.D. Mich. 2009) ........................................... 20, 21

*Taylor v. Waste Mgmt. of Mich.*,
2023 Mich. App. LEXIS 6802 (Ct. App. Sep. 21, 2023) ..........................................9

*Trepel v. Pontiac Osteopathic Hospital*,
135 Mich. App. 361 (1984) ..............................................................................20

*Tyson v. Sterling Rental, Inc.*,
836 F.3d 571 (6th Cir. 2016) ............................................................................30

*U.S. v. Bestfoods*,
524 U.S. 51 (1998) ........................................................................................39

*West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*,
727 F.3d 473 (6th Cir. 2013) ............................................................................31

*Westlake v. Lucas*,
537 F.2d 857 (6th Cir. 1976) ............................................................................24

*Willis v. New World Van Lines, Inc.*,
123 F. Supp. 2d 380 (E.D. Mich. 2000) ......................................................... 25, 26

*Zine v. Chrysler Corp.*,
236 Mich. App. 261 (Mich. Ct. App. 1999) ................................................... 37, 38

## STATUTES

18 U.S.C. §§ 664 ...............................................................................................32

18 U.S.C. § 1343 ..............................................................................................36

18 U.S.C. § 1954 ......................................................................................... 32, 36

42 U.S.C. § 256b ....................................................................................................14

Mich. Comp. Laws § 445.902 ..................................................................................38

Mich. Comp. Laws § 445.903 ..................................................................................39

Mich. Comp. Laws §§ 445.911 ................................................................................37

Mich. Comp. Laws § 550.926 ........................................................................... 15, 16

## REGULATIONS & RULEMAKINGS

75 Fed. Reg. 10272 (Mar. 5, 2010) *et seq*........................................................... 14, 17

## FEDERAL RULES

Fed. R. Civ. P. 8 ............................................................................................. 12, 26

## PRELIMINARY STATEMENT

CVS Health and its subsidiaries diverted millions of dollars in 340B Savings earmarked for the public.[1] Plaintiffs allege that Defendants secretly manipulated 340B-eligible claims to create a "Spread" between the fair market reimbursement paid on the initial adjudication of those claims and the artificially reduced reimbursement paid on the re-adjudication of the same claims. The Complaint details each Defendant's role in that scheme and the cooperation essential to it. Defendants' Motion to Dismiss ("Motion") downplays these allegations as a garden-variety contract dispute over a "politically controversial" program. The allegations are far more serious.

To escape accountability, Defendants make a slew of arguments that miss the mark. As to the contract claims, Defendants argue that only Caremark, LLC d/b/a CVS Specialty is bound by the Agreements,[2] and that Plaintiffs' failure to attach the Agreements or plead the breach with specificity warrants dismissal. But the Agreements expressly incorporate CVS Specialty and <u>*its affiliates*</u>, including the non-signatory Defendants, who performed under the Agreements and benefitted. And no rule requires a plaintiff to attach the contract to survive dismissal; Rule 8 requires only facts

---

[1] 340B Savings refers to the difference between the acquisition cost of 340B-eligible drugs and the reimbursement covered entities receive from payors. *Se*e Compl. ¶ 2, ECF No. 1, PageID.2.

[2] The sole contract involved in this matter is the Pharmacy Services Agreement ("PSA") between Plaintiffs, on the one hand, and Caremark LLC *and its affiliate*s on the other.

establishing the substance of the contractual obligation, the failure to perform, and resulting damages. Plaintiffs plausibly plead all three.

Defendants also take irreconcilable positions. They argue that CaremarkPCS's reduction of the reimbursement paid to CVS Specialty falls outside the Agreements because the Agreements do not address what reimbursement is paid to CVS Specialty by CaremarkPCS. Yet when Plaintiffs plead that the same conduct is fraud, tortious interference, and unjust enrichment, Defendants call those claims duplicative of the contract claim. Defendants cannot have it both ways. In any case, where the meaning of contractual terms is disputed, courts routinely permit contract claims and claims pled in the alternative to proceed together.

Defendants' remaining challenges fare no better. Their Rule 9(b) argument ignores the well-pled allegations dissecting the pricing scheme, the transmission of false data to conceal it, the refusal of an audit that would have exposed it, and the retaliatory termination that followed. Their RICO argument ignores Plaintiffs' detailed allegations that Defendants participated in an association-in-fact enterprise with the common goal of diverting monies to which they were not entitled, including each Defendant's role and the facts giving rise to each predicate act. Instead, Defendants cherry-pick snippets from the Complaint and declare them vague, faulting Plaintiffs for not alleging factual minutiae unnecessary to prove any predicate act.

Taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Complaint plausibly alleges that CVS Health and its subsidiaries breached the

Agreements and fraudulently diverted millions of dollars in 340B Savings owed to Plaintiffs. The Court should deny the Motion in its entirety.

## FACTUAL BACKGROUND[3]

Plaintiffs are non-profit hospitals that serve Medicaid and uninsured patients. Compl. ¶¶ 1, 4, 27-31, ECF No. 1, PageID.2-3, 10-11. Plaintiffs are "Covered Entities" in the 340B Drug Program, through which Congress sought to assist safety-net providers in fulfilling their charitable missions. *Id.* ¶¶ 52-53, 58, PageID.15-17. Plaintiffs purchase drugs at discounted prices from manufacturers and use the resulting 340B Savings (*i.e.*, the difference between the acquisition cost and the reimbursement received from payors) "to stretch scarce federal resources as far as possible, reaching more eligible patients and providing more comprehensive services."[4] *Id.* ¶¶ 1, 52-55, 58-60, PageID.2, 15-18. Plaintiffs entered into Pharmacy Services Agreements ("Agreements") with CVS Specialty *and its affiliates*, for the purpose of dispensing drugs to 340B-eligible patients. *Id.* ¶¶ 4, 32, 92, PageID.3, 11, 28.

### A. The Agreements and Relevant Provisions

The Agreements expressly define the contracting party as CVS Specialty "and its affiliates" collectively, not CVS Specialty standing alone. Compl. ¶¶ 93-94, ECF No. 1, PageID.28. Under the Agreements, the "Pharmacy" (*i.e.*, CVS Specialty and its affiliates)

---

[3] Plaintiffs provide a summary of the facts to refocus Defendants' misstated narrative.
[4] *340B Drug Pricing Program*, Health Res. & Servs. Admin., https://www.hrsa.gov/opa (last reviewed Aug. 2026).

must remit to Plaintiffs *all* reimbursement it receives from third-party payors for dispensing 340B drugs for the originally adjudicated claim, less an agreed dispensing fee (hereinafter, the "340B Remittance"). *Id.* ¶¶ 6, 94-95, 171-72, PageID.4, 28, 48. The Agreements further require that CVS Specialty comply with HRSA and Office of Pharmacy Affairs ("OPA") regulations and guidelines governing contract pharmacy services. *Id.* ¶¶ 103, 173, PageID.30, 48. The Agreements also contain an audit provision granting Plaintiffs the right to audit CVS Specialty's books and records; a right with which CVS Specialty agreed to comply in good faith. *Id.* ¶¶ 20, 97-101, 174, PageID.8, 29, 48.

### B. Vertical Integration Was Necessary for Defendants' Pricing Scheme

The pricing scheme cannot function without the cooperation of each Defendant. Compl. ¶ 156, ECF No. 1, PageID.44. When a 340B-eligible patient fills a prescription at CVS Specialty, CVS Specialty processes the prescription and submits a claim for reimbursement to CaremarkPCS, which instantly adjudicates the claim under the standard reimbursement rate for that patient's network, reflecting the fair market value for the drug dispensed. *Id.* ¶¶ 10, 13, PageID.5-6. CaremarkPCS communicates the reimbursement amount to CVS Specialty, directs the pharmacy to collect the patient's co-payment calculated on it, and then remits that reimbursement to CVS Specialty. *Id.* ¶¶ 10, 76, 79, 84-85, 110, PageID.5, 22-25, 31. CVS Specialty is then contractually obligated to pass that reimbursement through to Plaintiffs, less the agreed dispensing fee. *Id.* ¶ 112, PageID.32. At the time the patient receives the drug, none of the parties

know the patient is 340B-eligible, and the transaction is treated no differently from any other. *Id.* ¶ 110, PageID.31. The scheme begins when Wellpartner flags the claim as 340B-eligible and relays that information to CaremarkPCS and CVS Specialty. *Id.* ¶ 11, PageID.6.

Unbeknownst to Plaintiffs, CaremarkPCS and CVS Specialty undo the successfully adjudicated claim and reprice it at an artificially reduced amount far below fair market value, even though the patient already paid a copayment based on the original claim. *Id.* ¶¶ 89, 138, PageID.27, 39. Defendants then retain the difference between the amount paid on the original, successfully adjudicated claim reflecting the fair market value and the dollar amount of the secretly reprocessed claim. *Id.* ¶¶ 11-15, 87, 89, 113-24, 138, PageID.6-7, 26-27, 32-35, 39. Defendants effectively maintain two sets of books for the same 340B claims. The payor and the patient are not informed of, or receive the benefit of, the reduced and re-processed reimbursement, while the Covered Entity is not informed of, or receive the benefit of, the original higher reimbursement rate. *Id.* ¶¶ 148, 154, PageID.41, 43. The following illustration summarizes the scheme:




Defendants exploited the vertical integration of CVS Health's pharmacy benefit manager, CaremarkPCS, Third Party Administrator ("TPA"), Wellpartner, and specialty pharmacy, CVS Specialty, to divert more than half of the 340B Savings to which Plaintiffs was entitled. *See* Compl. ¶¶ 88, 95, 152, ECF No. 1, PageID.26, 28, 42. The scheme required: (1) CaremarkPCS to slash reimbursement rates on previously adjudicated and paid claims after the point of sale; (2) CVS Specialty to accept that reduced rate; and (3) Wellpartner to mask the true transaction from Plaintiffs through falsified documents. *Id.* ¶¶ 110, 115-17, 156, PageID.31-33, 44. Coordination is further evidenced by CVS's requirement that Covered Entities using CVS Specialty also use WellPartner as their TPA, *id.* ¶ 82, PageID.24, and CVS Specialty's acceptance of a reduced reimbursement rate that lowered its own dispensing fee, demonstrating the absence of arm's-length bargaining with CaremarkPCS, *id.* ¶ 149, PageID.42.

### C. Plaintiffs' Audit Demand and Defendants' Retaliatory Termination

On November 19, 2025, Plaintiffs served an audit demand as permitted under the Agreements seeking the data from the point-of-sale claims adjudicated in the standard network (the "first set of books"). Compl. ¶¶ 162-64, ECF No. 1, PageID.46. CVS, through Wellpartner, shares only the artificially reduced reimbursement data (the "second set of books") with Plaintiffs. *Id.* ¶¶ 115-17, 164, PageID.32-33, 46. Despite Plaintiffs' contractual right to audit, Defendants refused before terminating the Agreements for no apparent reason other than to retaliate against Plaintiffs for challenging the scheme. *Id.* ¶¶ 99, 166, PageID.29, 47. Compliance with the audit would have revealed further proof of the scheme, the names of the John Does who executed it, and the damage it caused.

## LEGAL STANDARD

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," but "does not need detailed factual allegations" to survive a Rule 12 motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court must "accept the allegations in the Complaint as true and drawing all reasonable inferences in favor of the plaintiff." *M.S. Willman v. AG*, 972 F.3d 819, 823 (6th Cir. 2020); *see Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (denying motion if the court can "draw the reasonable inference that defendant is liable for the misconduct alleged"). Factual disputes are inappropriate for resolution now (*In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1027 (E.D. Mich. 2003) and Defendants

bear the burden of proof. *Atkins v. Unknown Henning*, 2024 U.S. Dist. LEXIS 44005, at *2 (W.D. Mich. Mar. 13, 2024). Defendants have not met that burden.

## ARGUMENT

### I. Plaintiffs' Contract Claims Are Properly Asserted Against All Defendants

#### A. CaremarkPCS, Wellpartner, and CVS Health Are Parties to the Agreements

Defendants argue that Plaintiffs' contract claims fail against CVS Health, CaremarkPCS, and Wellpartner because Plaintiffs "contract[ed] only with CVS Specialty." Mot. to Dismiss (ECF No. 19) ("Mot.") at 11-12, PageID.191-192. However, "[t]he Agreements impose obligations not merely on Caremark but also ***their affiliates***." Compl. ¶¶ 93-94, 172, ECF No. 1, PageID.28, 48 (emphasis added). Plaintiffs further allege that each Defendant intentionally influenced CVS Specialty's contractual obligations to pass through the originally adjudicated reimbursement for 340B-eligible claims. *Id.* ¶¶ 158, 161, 240, PageID.44-45, 66. CaremarkPCS reduced the reimbursement paid to CVS Specialty, causing CVS Specialty to remit an artificially reduced amount to Plaintiffs while CVS Health retained the spread. *Id.* ¶¶ 114, 129, PageID.32, 37. To conceal this breach, Wellpartner provided Plaintiffs with false remittance reports that misrepresented the reimbursement received by CVS Specialty. *Id.* ¶ 115, PageID.32. CVS Health and its officers (John Does 1-5) designed and implemented this scheme, which required coordination among the vertically integrated entities within the CVS corporate structure. *Id.* ¶¶ 39, 108, 221-23, PageID.12, 31, 58-61. When presented with similar facts, Michigan courts held that where a contract

defines a party broadly to include the party's affiliates, the signatory's affiliate is bound as a party to the agreement. *See, e.g., Great Lakes Acquisition Corp. v. Roncelli*, 2021 Mich. Cir. LEXIS 718, at *7-8 (Mich. 6th Jud. Cir. Ct. Sept. 28, 2021); *Admin. Sys. Research Corp. Int'l v. Davita Healthcare*, 2016 Mich. Cir. LEXIS 410, at *14-15 (Mich. 17th Jud. Cir. Ct. Sept. 15, 2016); *Taylor v. Waste Mgmt. of Mich.*, 2023 Mich. App. LEXIS 6802, at *9 (Ct. App. Sep. 21, 2023).

Moreover, a non-signatory can be liable for breach of contract even where the agreement does not name it, if its conduct "manifests an intent to be bound" through "voluntarily undertaking some unequivocal act sufficient for that purpose," *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006), or if it performs or receives contractual services. *See Frisch v. FCA US, LLC*, U.S. Dist. LEXIS 141394, at *14 (E.D. Mich. June 25, 2026) (finding assent to contract by accepting benefits under warranty); *Aragonite Capital Mkts., LLC v. Dark Horse Media, LLC*, 2023 U.S. Dist. LEXIS 53193, at *8 (N.D. Ohio Mar. 28, 2023) (denying dismissal of contract claim against non-signatory affiliate that received the benefit of plaintiff's services).

Such is the case here. Plaintiffs allege numerous facts revealing CaremarkPCS's, Wellpartner's, and CVS Health's "intention to be bound by the [Agreements]" by directly providing services and engaging in conduct geared towards controlling and/or managing CVS Specialty's performance. The contract pharmacy relationship between Plaintiffs and CVS Specialty created the basis upon which: (1) CaremarkPCS billed its payor clients and received the standard national network rate for the 340B-eligible

drugs, then conspired with CVS Specialty to claw back and reduce the point-of-sale the reimbursement solely to generate "Spread" kept by CVS Health; (2) Wellpartner flagged which claims were 340B-eligible and transmitted falsified remittance reports to Plaintiffs to conceal the reduced reimbursement, all while receiving administrative fees; and (3) CVS Health executives designed and implemented the discriminatory pricing scheme to siphon most of the available 340B Savings that should be flowing to Plaintiffs. *See* Compl. ¶¶ 3-14, 108-22, 147-52, ECF No. 1, PageID.3-7, 31-34, 41-42.

Defendants contend that CaremarkPCS is a "different company engaged in a different line of business," Mot. at 13-14, ECF No. 19, PageID.193-194, as a distraction. But the pricing scheme works because CaremarkPCS and CVS Specialty conspired together to artificially reverse the original successfully adjudicated claim and re-adjudicate that claim for a lower reimbursement. Indeed, CaremarkPCS can only manufacture the 340B "Spread" after receiving notification from Wellpartner that the claims already dispensed were 340B-eligible, and only on prescriptions that are serviced under the Agreements between CVS Specialty and Plaintiffs. This conduct by CaremarkPCS is akin to "micro-managing" a sister company's performance under the Agreements by affiliated entities with an obvious financial interest in how the contract is performed; facts that were sufficient to sustain a breach of contract claim against a non-signatory in *Frisch*, 2026 LX 317490, at *14. Thus, Plaintiffs' contract claims are properly pleaded against CaremarkPCS, Wellpartner, and CVS Health.

### B. CaremarkPCS, Wellpartner, and CVS Health Are Alter Egos of CVS Specialty

Alter ego liability provides an alternate route to the same conclusion. Piercing the corporate veil requires that: "(1) that the corporate entity is a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit fraud or a wrong, and (3) that, as a result, the plaintiff suffered an unjust injury or loss." *Dutton Partners, LLC v. CMS Energy Corp.*, 802 N.W.2d 717, 722 (Mich. Ct. App. 2010). Factors bearing on whether one entity is the mere instrumentality of another include "the extent to which a company is controlled by its owners or a separate entity," *People ex rel. AG v. Mich. Bell Tel. Co.*, 224 N.W. 438, 440 (Mich. 1929), and whether "the assets of the subsidiary are employed for the benefit of the controlling corporation" beyond its capacity as a shareholder, *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 799 (6th Cir. 2007).

Plaintiffs allege sufficient facts for alter ego liability. The Complaint explains how Defendants exploited their vertical integration and common ownership/control by CVS Health to: (1) mandate the use of Wellpartner as the TPA for any Covered Entity that enters into a contract pharmacy relationship with CVS Specialty, Compl. ¶ 82, ECF No. 1, PageID.24; (2) require CVS Specialty to agree to a secret pricing arrangement with CaremarkPCS that *reduced* the dispensing fees earned by CVS Specialty, *id.* ¶ 149, PageID.42; and (3) reduce CVS Specialty's reimbursement on 340B claims to generate the very "Spread" pocketed by Defendants, *id.* ¶¶ 119, 122, PageID.33-34. Defendants

dominated CVS Specialty to act contrary to its own interests in service of a broader scheme to defraud Plaintiffs. *Novo Nordisk v. Caraco Pharm. Labs., Ltd.*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006) (sustaining veil-piercing claim based on a "controlling parent-subsidiary relationship" and noting the factual dispute "is a matter better left up to the discovery process"). Indeed, the "small difference in lost dispensing fee pales in comparison to the large Spread that CVS Health/CaremarkPCS receives," and "the scheme results in a huge net positive for the Defendants." Compl. ¶ 150, ECF No. 1, PageID.42. Thus, Plaintiffs properly alleges a contract claim against the non-signatory Defendants.

### C. Plaintiffs Adequately Identify the Contractual Provisions Breached

Defendants argue that Plaintiffs fail to identify "the specific terms" CVS Specialty breached because it does not attach the Agreements. Mot. at 12, ECF No. 19, PageID.192.[5] However, Rule 8's notice-pleading standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not attach the contract or quote its provisions verbatim. *See*

---

[5] Defendants fault the Complaint for lack of specificity while repeatedly citing Complaint paragraphs that do not support the propositions asserted. *See, e.g.*, Mot. at 13, 17, ECF No. 19, PageID.193, 197 (citing ¶ 178(1) and ¶ 178(4) for alleged contractual breaches, although ¶ 178 states only Plaintiffs' damages estimate and contains no subparagraphs); *id.* at 11, PageID.191 (citing ¶ 30, 170 for the proposition that Plaintiffs contracted only with CVS Specialty, although ¶ 30 merely identifies Henry Ford Wyandotte's place of business); *id.* at 17 n.5, PageID.197 (citing ¶¶ 246-252 although the Complaint ends at ¶ 251). A motion demanding precision should accurately cite the pleading it attacks.

*Gardner v. Flagstar Bank, FSB*, 2021 U.S. Dist. LEXIS 158548, at *7-8 (E.D. Mich. Aug. 23, 2021) (rejecting argument that a pleading must identify the specific terms breached where the complaint was "replete with references to various provisions of the Agreement"); *see also Composite Techs., L.L.C. v. Inoplast Composites SA DE CV,* 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013) ("a plaintiff is not required to attach to the Complaint documents upon which his action is based."). Rather, a plaintiff adequately pleads a contract claim by identifying the substance of the contractual obligation, the defendant's failure to perform, and resulting damages. *See Twombly*, 550 U.S. at 555–56.

Plaintiffs describe Defendants' contractual obligations, including: (1) the provision requiring CVS Specialty and its CVS Health affiliates to remit to Plaintiffs all reimbursement received from third-party payors for 340B drugs dispensed, less the agreed upon dispensing fee, Compl. ¶¶ 6, 94-95, 171-72, ECF No. 1, PageID.4, 28, 48; (2) the provision requiring CVS Specialty and affiliates to comply with HRSA and OPA regulations and guidelines governing Contract Pharmacy services, *id.* ¶¶ 103, 173, PageID.30, 48; and (3) the audit provision granting Plaintiffs the right to audit Defendants' books and records, *id.* ¶¶ 98-100, 174, PageID.29, 48. These detailed allegations go far beyond what is required under *Twombly/Iqbal.*[6]

### D. Defendants Breached Their Promise to Comply with HRSA/OPA Guidelines

[6] The case cited by Defendants is readily distinguishable. In *Doe v. BMG Sports*, LLC, 584 F. Supp. 3d 497 (S.D. Ohio 2022), the plaintiff did not identify the terms of the contract and did not put Defendant on notice of what terms were violated.

Defendants argue that (i) no HRSA regulation requires that all 340B savings accrue to Covered Entities, (ii) HRSA lacks authority to regulate contract pharmacies, and (iii) Plaintiffs cannot use a contract claim to enforce a statute lacking a private right of action. Mot. at 14-16, ECF No. 19, PageID.194-196. Each argument mischaracterizes Plaintiffs' claim.

Plaintiffs are not asserting a private right of action under 42 U.S.C. § 256b. Rather, Plaintiffs are enforcing the Agreements' own promise to comply with the HRSA OPA's Contract Pharmacy Services Guidelines, Compl. ¶¶ 103, 173, ECF No. 1, PageID.30, 48, which incorporates the guidelines published at 75 Fed. Reg. 10272 (Mar. 5, 2010 Notice).[7] Those Guidelines make clear that Covered Entities, not PBMs or contract pharmacies, decide how to spend the 340B revenues from the contract pharmacy relationship. *Id.* at 10277. Enforcing that contractual undertaking is entirely distinct from implying a private right of action under the 340B statute. Laws without a private right of action may form the basis of a breach of contract claim if expressly incorporated into the contract. *See Johnson v. World All. Fin. Corp.,* 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement").[8] Here,

[7] *See* https://www.hrsa.gov/opa/implementation-contract ("The Notice Regarding 340B Drug Pricing Program — Contract Pharmacy Services […] provides guidelines for the operation and compliance of contract pharmacies.").

[8] Defendants rely on *Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 558 (S.D.N.Y. 2004), to argue that a breach-of-contract claim cannot enforce incorporated statutory or regulatory requirements absent a private right of action. However, *Broder* distilled too

Plaintiffs allege the HSRA OPA's Guidelines are incorporated into the Agreement. Compl. ¶¶ 103, 173, ECF No. 1, PageID.30, 48.

### E. Defendants Breached the Contractual Obligation to Comply with Michigan's 340B Pricing Law

Defendants contend that the breach of contract premised on Michigan's 340B Pricing Law, MCL § 550.926, fails because (1) Plaintiffs are using a contract claim as an "end-run" around a statute lacking a private right of action, Mot. at 16, ECF No. 19, PageID.196, and (2) Section 550.926(1) does not regulate a contract pharmacy's relationship with a covered entity, *id.* at 16-17, PageID.196-197. Both arguments fail.

#### *i. Plaintiffs are suing for breach of an express contractual promise, not an implied statutory right*

Plaintiffs assert a breach of the Agreements' express "compliance with law" provision, in which Defendants promised to comply with all applicable laws, including the Michigan 340B Pricing Law. Compl. ¶ 175, ECF No. 1, PageID.48. Plaintiffs allege that Defendants' 340B pricing scheme "violates Michigan's 340B Pricing Law, MCL § 550.926, because it discriminates against the Covered Entities by prov[iding] for less

---

broad a rule from the cited authority, *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003), which held a breach of contract action was unavailable to enforce the Davis-Bacon Act because that statute provided a "regulatory scheme providing administrative remedies." *Id.* at 85. The 340B statute creates no administrative remedies for misconduct by contract pharmacies. On the contrary, HRSA regulations make clear that Covered Entities' recourse against non-compliant pharmacies is *contractual* in nature and based on the agreement between private parties. *See 75* Fed. Reg. at 10274 ("Covered entities have the responsibility to have ***agreements with contract pharmacies and procedures in place*** sufficient to enable the covered entity to meet its obligations under the law" (emphasis added)).

favorable reimbursement than if that same drug were not a 340B drug claim," and breaches the parties' Agreement. *Id.* ¶¶ 17, 177, PageID.7, 49. This is a freestanding contractual duty enforceable regardless of whether the statute itself confers a private right of action, and it seeks contract damages, not a statutory remedy.

### *ii. Plaintiffs plausibly allege conduct covered by Section 550.926*

Defendants argue the statute regulates only PBMs, not contract pharmacies. Mot. at 16-17, ECF No. 19, PageID.196-197. But as previously discussed, the Agreements encompass all CVS entities, Compl. ¶ 93, ECF No. 1, PageID.28, and the Complaint sets forth that CVS Specialty entered into an agreement with CaremarkPCS to pay discriminatory reimbursement rates on 340B drug claims. *Id.* ¶¶ 12-15, 108-22, PageID.6-7, 31-34. The PBM could not have paid discriminatory rates without the consent of the contract pharmacy. Thus, even assuming Michigan's 340B Pricing Law only applies to PBMs, Plaintiffs allege how CVS Specialty enabled CaremarkPCS to violate Michigan law, in breach of the Agreements' compliance-with-law provision.

## II. Plaintiffs' Audit-Related Contract Claim Complies with Notice Pleading

The Agreements contain clear audit provisions with which Defendants refused to comply. Compl. ¶¶ 97-102, ECF No. 1, PageID.29-30. Now, having refused the audit altogether, Defendants argue that Plaintiffs: (i) failed to allege any "specifics" concerning the audit procedures; and (ii) failed to plead damages attributable to the audit denial. Mot. at 17-18, ECF No. 19, PageID.197-198. Each argument fails.

First, Plaintiffs allege breach of the audit provision with the level of specificity required by Rule 8's pleading standard. *See, supra,* Section I.C.

Second, Plaintiffs have adequately identified damages arising from this claim since the denial of an audit is: (1) plainly related to the already-pled $29 million in losses since an audit would have permitted Plaintiffs to identify and recover the loss; and (2) inextricably linked to the retaliatory termination of the Agreements, resulting in lost future 340B remittances. Compl. ¶¶ 118, 243, ECF No. 1, PageID.33, 66. In any case, Plaintiffs' claim for breach of the audit provision should not be dismissed because Plaintiffs seek specific performance (*i.e.*, undoing the retaliatory terminations and requiring Defendants to comply with the audit) for which monetary damages are inadequate. *Luxury Limousine, Inc. v. Nat'l Indem. Co.*, 2019 LX 32111, at *4 (E.D. Mich. Aug. 7, 2019).

HRSA guidelines require contract pharmacies to provide Covered Entities access to their books and records to ensure compliance with the 340B program's requirements. Compl. ¶ 97, ECF No. 1, PageID.29; *see* 75 Fed. Reg. 10272, 10278 (contract pharmacy must "assure that all pertinent reimbursement accounts and dispensing records…will be made available to the covered entity"). By refusing Plaintiffs' reasonable audit demand in violation of the contract and HRSA guidelines, Defendants exposed Plaintiffs to administrative sanctions and even potential termination from the 340B

Program.[9] Courts have held that agency enforcement actions that result in loss of funds can constitute irreparable injury. *See*, *e.g.*, *Colorado v. Trump*, 823 F. Supp. 3d 1251, 1278-79 (D. Colo. 2026) (noting irreparable harm arising from loss of administrative funds due to non-compliance with USDA rules).

Finally, Defendants argue that the denial of an audit cannot breach the contract because Defendants were entitled to terminate the Agreements. This argument fails because the terminations were unlawful even if at-will.

## III. Plaintiffs Adequately Plead a Violation of the Implied Covenant

### A. The Implied Covenant Claim Sounds in Contract

Defendants argue that Michigan law does not recognize an "independent cause of action for breach of the implied covenant," relying principally on *Kircher v. Boyne USA, Inc.*, 2025 Mich. LEXIS 479, at *8 (2025). Mot. at 19, ECF No. 19, PageID.199. Plaintiffs assert no such claim. Rather, Count Five expressly pleads "*breach of contract* via the implied covenant of good faith and fair dealing."[10] *See* Compl. at 63, ECF No. 1, PageID.63 (emphasis added). As *Kircher* confirms, Michigan courts have long

[9] HRSA routinely audits and sanctions Covered Entities for non-compliance with 340B Program Rules, including repayment of the 340B discounts to manufacturers and even termination of the contract pharmacy or covered entity facilities from the 340B program. *See*, *e.g.*, https://www.hrsa.gov/opa/program-integrity/fy-22-audit-results.

[10] Defendants' remaining authorities are inapposite and establish only that the implied covenant cannot exist independently of a contractual obligation. *See Gorman v. Am. Honda Motor Co,* 839 N.W.2d 223, 235 (Mich. Ct. App. 2013) (holding the "obligation of good faith […] has no life of its own that may be enforced by an independent cause of action"); *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) (same); *Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 648 (W.D. Mich. 2022) (same).

recognized such a contract claim where "a party to a contract makes the manner of its performance a matter of its own discretion," and case law implies that the discretion be exercised "honestly and in good faith." 2025 Mich. LEXIS 479, at *8 (quoting *Burkhardt v. City Nat'l Bank*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975).[11] Such is the case here.

Here, unlike in *Kircher*,[12] the Agreements required Defendants to perform the services necessary to process and remit Plaintiffs' 340B reimbursement while leaving the manner of that performance within Defendants' control. Compl. ¶¶ 78-79, 92-95, 109-12, ECF No. 1, PageID.23, 28, 31-32. Defendants exercised that discretion in bad faith by re-processing 340B claims at lower reimbursement rates solely to reduce the 340B Savings passed to Plaintiffs, while concealing the higher reimbursement through falsified claims data, thereby depriving Plaintiffs of the "fruits of the contract." *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. Ct. App. 1992); *see* Compl. ¶¶ 89-91, 115-21, ECF No. 1, PageID.27, 32-34. Michigan law treats such

---

[11] In *Burkhardt*, the bank exercised contractual discretion over mortgage escrow calculations using an accounting method not specified in the contract. 226 N.W.2d at 679-80. Consistent with *Burkhardt*, this Court has repeatedly acknowledged that a contract claim may lie under Michigan law for breach of the implied duty of good faith and fair dealing. *See ParaData Comp. Networks, Inc. v. Telebit Corp.*, 830 F. Supp. 1001, 1005 (E.D. Mich. 1993) ("if [defendant's] performance was a matter of its own discretion, then this court will imply the covenant [of good faith and fair dealing]"); *PTN-NRS, LLC v. Cnty. of Wayne*, 2017 Mich. App. LEXIS 1523, at *9 (Mich. Ct. App. Oct. 5, 2017) (same); *Liggett Rest. Grp. v. City of Pontiac*, 2005 Mich. App. LEXIS 2962, at *4-5 (Mich. Ct. App. Nov. 29, 2005) (same).

[12] In *Kircher*, the court considered whether the plaintiff's breach-of-contract claim fell within the "scope of the implied covenant," but held that the covenant did not apply because the parties had adopted an unambiguous pricing formula that left defendants no discretion in setting the redemption price. 2025 Mich. LEXIS 479, at *8-9.

conduct as a breach of contract in its own right. *See, supra,* Section I.A-D. Accordingly, the Court should permit Plaintiffs to proceed with their implied covenant claim.[13]

## IV. Plaintiffs State a Viable Claim for Fraud

Defendants challenge the fraud claim on two narrow grounds: (1) that it impermissibly duplicates the contract claim, and (2) that it was not pleaded with particularity. Both arguments lack merit.

Plaintiffs may pursue fraud claims alongside contract claims based on misrepresentations that are "extraneous to the contract." *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 373-74 (1995). That rule reflects the distinction between tort duties, which "aris[e] from policy considerations formed without reference to any agreement between the parties[,]" and contractual duties, which "arise[] from society's interest in the performance of promises." *Steel Strip Wheels, Ltd. v. General Rigging, LLC*, 2009 U.S. DIST LEXIS 90407, at *35 n.6 (E.D. Mich. 2009) (quoting *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 530 (1992)).

Plaintiffs allege that "Defendants represented the amount paid to Plaintiffs was the total amount received, but Defendants had actual knowledge it was not." Compl. ¶

---

[13] To the extent Defendants contend that the Agreements can be interpreted to permit replacing the point-of-sale reimbursement with a lower rate after a claim is identified as 340B-eligible, that competing interpretation presents a dispute over interpretation of the contract and cannot be resolved on a motion to dismiss. *See Trepel v. Pontiac Osteopathic Hospital*, 135 Mich. App. 361, 373 (1984) (finding where contractual terms are subject to competing interpretations, the resulting "ambiguity raises a question of fact in the pleadings which should not have been disposed of by dismissal").

203, ECF No. 1, PageID.54. Plaintiffs further allege that "Defendants made this representation knowing its falsity," and that Defendants compounded that misrepresentation through Wellpartner's submission of false and misleading remittance reports to Plaintiffs. *Id.* ¶¶ 203, 221, PageID.54, 58-60. These representations are extraneous to the contract because they caused Plaintiffs to assume additional undertakings including their "agree[ment] to allow CVS Specialty to act as a Contract Pharmacy in exchange for substantial dispensing fee and TPA fee." *Id.* ¶ 206, PageID.55. "Plaintiffs would not have entered into the Agreements had [they] known that Defendants would impose discriminatory pricing" that facilitated the scheme. *Id.* ¶ 204, PageID.54-55. These allegations describe intentional misrepresentations by CVS Specialty and Wellpartner to make it seem as though CVS Specialty and its affiliates performed fully under the Agreements. *See, e.g.*, *Steel Strip Wheels*, 2009 U.S. Dist. LEXIS 90407, at *36-37 (finding plaintiff's fraud claim extraneous to the contract where defendants made "deliberate misrepresentations" to convince plaintiff to continue contracting with defendants).

Defendants cite numerous cases for the proposition that a plaintiff cannot recast a breach-of-contract claim as fraud where the alleged fraud consists only of a failure to perform, or concealment of nonperformance of, a contractual obligation. *See* Mot. at 20-21, ECF No. 19, PageID.200-201. But in each cited authority, the alleged tort was a failure to perform specific contractual obligations, not affirmative misrepresentations made through separate reporting instruments to conceal contractual nonperformance.

*See Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015) (fraud theory rested on defendant's alleged failure to provide the functioning alarm system promised by contract); *Leonor v. Provident Life & Accident Co.*, 2013 U.S. Dist. LEXIS 38423, at *6 (E.D. Mich. Mar. 20, 2013) (alleged misrepresentation that plaintiff would receive benefits arose from the contractual obligation to pay those benefits); *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 2017 U.S. Dist. LEXIS 113759, at *6 (E.D. Mich. July 21, 2017) (fraud claim arose from the contractual reimbursement arrangement), *aff'd*, 146 F.4th 496 (6th Cir. 2025); *Hart v. Ludwig*, 347 Mich. 559, 563 (1956) (rejecting tort claim based on the mere failure to perform a contractual promise). None involved allegations that Plaintiffs "would not have entered into the Agreements had [they] known" of Defendants' misrepresentations. Compl. ¶ 204, ECF No. 1, PageID.54-55.

Defendants' "particularity" argument fares no better. Rule 9(b) exists to "provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud," and is construed "liberally," requiring only that a plaintiff "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Plaintiffs identify the speakers (Defendants), the misrepresentation (the "gross insurance payment" and patient co-pay), the form of the misrepresentation (the "remittance reports"), the interstate path

of those misrepresentations, and their frequency (*i.e.*, monthly). Compl. ¶¶ 199, 221, ECF No. 1, PageID.53, 58-60. Plaintiffs even provide numerous examples of claims on which Defendants perpetrated their scheme. *Id.* ¶ 125-42, PageID.36-40. These allegations provide fair notice of Plaintiffs' fraud claim.

According to Defendants, however, Rule 9(b) also requires allegations explaining all "contextual facts around any discussion in which a false statement was supposedly made," and the "name of anyone within Plaintiffs' organizations who heard or received the supposedly false statement." Mot. at 23, ECF No. 19, PageID.203. But the law cuts against this argument. *See Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir. 2007) ("where the corporation is the defendant […] a relator need not always allege the specific identity of the natural persons within the defendant corporation that submitted the false claims"). The Court should reject Defendants' attempt to stretch Rule 9(b).[14]

## V. Plaintiffs State a Viable Claim for Tortious Interference with Contract

### A. Plaintiffs Adequately Pled a Breach

Contrary to Defendants' assertion, Plaintiffs' breach of contract claim is well-pled. *See, supra,* Section I-II. As discussed, the Agreements required CVS Specialty and its affiliates to remit all reimbursement it receives from third-party payors for dispensing 340B drugs for the originally adjudicated claim, less an agreed dispensing fee. Compl. ¶ 95, ECF No. 1, PageID.28. Plaintiffs provide numerous representative claims showing

[14] Compliance with the audit would have provided Plaintiffs with additional information regarding the scheme and allowed Plaintiffs to allege fraud with greater specificity.

that Defendants failed to deliver on this promise. *Id.* ¶¶ 124-44, PageID.35-41. Plaintiffs further allege that Defendants breached the Agreements by failing to comply with HRSA and OPA regulations/guidance, as well as failing to respond to Plaintiffs' audit demand. *Id.* ¶¶ 103, 173-74, 177, PageID.30, 48-49. These allegations are sufficient to plead a breach. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) (explaining that "[a] complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant.").

### B. Defendants' Corporate Relationship Does Not Negate the Claim

Defendants claim that CVS Health, CaremarkPCS, and Wellpartner could not have interfered with the Agreements because they are party of the same corporate family as CVS Specialty. Mot. at 25, ECF No. 19, PageID.205. Defendants rely on *Knight Capital Partners Corp. v. Henkel AG & Co.*, to argue that a parent corporation is generally privileged to interfere with its wholly owned subsidiary's contract. 930 F.3d 775, 783 (6th Cir. 2019). However, the corporate family doctrine provides only a qualified privilege when a parent acts in the contracting party's interest *without* engaging in "wrongful means" or acting with an "improper purpose," such as fraud or malice. *Id.* at 784-85 (recognizing a qualified privilege to protect one's financial interest, provided no wrongful means or improper purpose, such as fraud or malice, are employed); *see Speroni S.P.A. v. Perceptron, Inc.*, 12 Fed. Appx. 355, 360 (6th Cir. 2001) (same). Defendants are not entitled to this privilege.

Defendants fraudulently concealed the discriminatory 340B pricing scheme, causing CVS Specialty to reimburse Plaintiffs less than required under the Agreements, in part based on Wellpartner's false reports. Compl. ¶¶ 108, 160-61, 197-205, 239-44, ECF No. 1, PageID.31, 45, 53-55, 66-67. The scheme depended on each Defendant's distinct participation to wrongfully divert 340B savings to CVS. *Id.* ¶¶ 108-22, 156, 221, PageID.31-34, 44, 58-60. Recall that Defendants maintained two sets of reimbursement data for the same claims: the original point-of-sale adjudication used to calculate the patient's copay, and a later, artificially reduced reimbursement generated after the claim was identified as 340B-eligible. *See, supra,* Facts, Section C; Compl. ¶¶ 115-17, 162-64, ECF No. 1, PageID.32-33, 46. That reduced reimbursement decreased the dispensing fee CVS Specialty would otherwise receive, while CaremarkPCS and CVS Health retained and profited from the resulting spread. *Id.* ¶¶ 149-52, PageID.42. These allegations show that Defendants advanced their own interests at CVS Specialty's expense. Accordingly, the corporate family doctrine does not apply.

Defendants also misapply *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380 (E.D. Mich. 2000), which they cite to argue that the non-signatory Defendants cannot be "third parties" to one another's contracts because they share a corporate affiliation with CVS Specialty. Mot. at 25, ECF No. 19, PageID.205. The *Willis* court granted summary judgment because the undisputed record contained "nothing" showing that affiliated defendants were "acting in their own benefit to the detriment of other [affiliated] entities." *Willis*, 123 F. Supp. 2d at 397. Plaintiffs allege the opposite:

CaremarkPCS and CVS Health retained more than half of Plaintiffs' 340B Savings, while the depressed reimbursement significantly reduced CVS Specialty's dispensing fee. Compl. ¶¶ 148-50, 152, ECF No. 1, PageID.41-42. *Willis* therefore does not support dismissal.

Notably, Defendants have adopted inconsistent positions they fail to reconcile. For example, to defeat Plaintiffs' contract claims, Defendants insist that CVS Health, CaremarkPCS, and Wellpartner are not parties to the Agreements. Mot. at 8-10, ECF No. 19, PageID.188-190. Yet, for Plaintiffs' tortious interference claim, Defendants appeal to their close ties with CVS Specialty as signatory to the Agreements. *Id.* at 25, PageID.205. Under these circumstances, Plaintiffs may plead that Defendants are bound by the Agreements or, in the alternative, that the non-signatories tortiously interfered with CVS Specialty's performance under the Agreements. *See* Fed. R. Civ. P. 8 (d)(2)-(3). At a minimum, the factual questions concerning each Defendant's wrongful actions and relation to the Agreements cannot be resolved against Plaintiffs at the pleading stage.

### C. Plaintiffs Plausibly Allege Intentional and Improper Interference

Defendants argue that Plaintiffs have not alleged facts showing Defendants acted "for the purpose of causing [CVS Specialty] to breach its contract with Plaintiffs." Mot. at 25, ECF No. 19, PageID.205. But intent is satisfied where the defendant acts for the purpose of causing the breach, even if the breach is merely a means to accomplish some other end. *Knight Enters., Inc. v. RPF Oil Co.*, 299 Mich. App. 275, 281 (Mich. Ct. App.

2013). Where the defendant knows that interference is certain or substantially certain to result from its conduct and proceeds anyway, the interference is intentional, and "as the improper conduct becomes more egregious, the plaintiff's burden to demonstrate the defendant's intent to interfere may inversely lessen." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 716, 718 (6th Cir. 2018). The Complaint more than satisfies that standard.

Plaintiffs allege that CVS Health, CaremarkPCS, and WellPartner designed and executed a discriminatory pricing scheme, used false reporting instruments to conceal it, refused an audit that would have exposed it, and retaliated against Plaintiffs for pressing the issue. Compl. ¶¶ 114-22, 161-66, ECF No. 1, PageID.32-34, 45-47. Defendants undertook these coordinated acts "solely to reduce the 340B Remittance" owed under the Agreements and divert 340B revenue to themselves. *Id.* ¶ 120, PageID.34. Plaintiffs further allege that Defendants carried out the scheme through fraud, wire fraud, and materially false reimbursement data. *Id.* ¶¶ 196-207, 219-20, PageID.53-55, 58. These allegations plausibly establish that each non-signatory Defendant intentionally procured CVS Specialty's breach. Accordingly, the Court should deny the Motion on this claim.

## VI. Plaintiffs Plausibly Allege a Claim for Unjust Enrichment

Defendants first argue that the Agreements bar an unjust enrichment claim. Mot. at 28, ECF No. 19, PageID.208. In Michigan, however, a valid and enforceable contract generally precludes quasi-contract claims only when the claims concern the same

subject matter in dispute and binds the same parties. *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 199 (Mich. Ct. App. 2006).[15] Courts apply this rule when the terms and scope of the agreement are not disputed and plainly cover the subject matter at issue. *See Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012) (declining to dismiss unjust enrichment claim pleaded in the alternative where it was unclear which contract covered the claims against each defendant). Where parties dispute the existence or scope of an agreement, courts allow plaintiffs to pursue quasi-contract claims alongside standard contract claims. *Id.*; *see Hennigan v. Gen. Elec. Co.*, 2010 U.S. Dist. LEXIS 103090, *15 (E.D. Mich. Sept. 29, 2010) ("[U]nder [Rule] 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment.").

Much like the *Ajuba Int'l, LLC v. Saharia,* 871 F. Supp. 2d 671 (E.D. Mich. 2012) defendants, Defendants here either expressly disavow any contractual relationship with Plaintiffs (*i.e.*, CVS Health, CaremarkPCS, and Wellpartner) or, in the case of CVS Specialty, dispute Plaintiffs' allegations describing the conduct giving rise to the alleged breach. *See* Mot. at 2, 7, 11-12, 28, ECF No. 19, PageID.182, 187, 191-192, 208. As in *Ajuba Int'l, LLC*, questions of fact concerning the scope of the Agreements and their application to the claims asserted against each Defendant preclude dismissal at this stage. 871 F. Supp. 2d at 692.

---

[15] In *Morris Pumps*, plaintiffs' contracts with a subcontractor did not bar unjust enrichment claims against a non-signatory general contractor concerning the same materials. 273 Mich. App. at 194-96, 199-200.

Next, Defendants argue that Plaintiffs conferred no benefit on Defendants because the payments they allegedly retained were made by insurers, not Plaintiffs. Mot. at 27-28, ECF No. 19, PageID.207-208. To state an unjust enrichment claim, Plaintiffs need only allege "the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Morris Pumps*, 273 Mich. App. at 195. Michigan law does not require the alleged benefit to take the form of a payment made directly by the plaintiff to the defendant. *See id.* at 195-197 (affirming unjust enrichment claim where defendant retained and used materials plaintiffs supplied through another contracting party). Rather, the relevant question is whether Defendants unjustly received and retained an independent benefit from Plaintiffs' contractual performance. *Id.* at 196.

Plaintiffs allege that they supplied CVS Specialty with the drugs it dispensed to Plaintiffs' patients, without CVS Specialty bearing the acquisition cost. Compl. ¶¶ 2-7, 81-87, ECF No. 1, PageID.2-4, 24-26. Defendants then reprocessed successfully adjudicated claims and retained a portion of the reimbursement generated from those drugs as "Spread." *Id.* ¶¶ 114-22, PageID.32-34. In other words, Defendants retained a portion of the reimbursement generated by Plaintiffs' 340B drugs to which they were not entitled. These allegations are sufficient to satisfy the benefit requirement, and the Court should deny Defendants' request to dismiss the unjust enrichment claim.

## VII. Plaintiffs Adequately Plead RICO Violations

### A. Plaintiffs May Pursue RICO Alongside Contract Claims

Defendants CVS Health, CaremarkPCS Health, and Wellpartner, LLC expressly disavow any contractual privity with Plaintiffs. *See* Mot. at 2, ECF No. 19, PageID.182. Assuming *arguendo* Defendants are correct (they are not), Plaintiffs' RICO claim against these Defendants could not possibly sound in contract. Michigan law recognizes that contractual obligations do not "extinguish or limit" separate common-law or statutory duties owed to noncontracting parties. *Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 489 Mich. 157, 172 (2011); *see Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 581-82 (6th Cir. 2016) (explaining that Michigan law does not bar tort claims based on duties arising separately and distinctly from contractual obligations). In other words, the Agreements between Plaintiffs and CVS Specialty do not immunize the non-signatory Defendants from liability for their alleged RICO violations.

In addition, the existence of a contractual relationship does not categorically preclude a RICO claim where the plaintiff "made sufficient allegations of intentional fraud." *Dana Corp. v. BCBS Mut. of N. Ohio*, 900 F.2d 882, 885 (6th Cir. 1990).[16] As discussed, the alleged misrepresentations are "extraneous to the contract" because they

---

[16] Defendants' reliance on *Keveligan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 777 (E.D. Mich. 2010) does not alter this result. *See* Mot. at 29, ECF No. 19, PageID.209. *Keveligan* relied on *Blount Financial Services, Inc. v. Walter E. Heller & Co.*, where the alleged fraud arose from a dispute over the prime rate required by the parties' contract. *See Dana Corp.*, 900 F.2d at 884-85 (discussing *Blount*). The Sixth Circuit later clarified that *Blount* "does not stand for a blanket prohibition of RICO claims related to contract disputes." *Id.* Rather, dismissal was warranted because the plaintiff failed to sufficiently allege deceptive misrepresentations or omissions. *Id.*

caused Plaintiffs to assume additional undertakings including their "agree[ment] to allow CVS Specialty to act as a Contract Pharmacy in exchange for substantial dispensing fee and TPA fee." Compl. ¶ 206, ECF No. 1, PageID.55; *see also Eagle Trim, Inc. v. Eagle-Picher Indus., Inc.*, 205 F. Supp. 2d 746, 753-54 (E.D. Mich. 2002) (allowing fraud claim to proceed alongside contract claim where defendant misrepresented the existence of receivables that the contract also warranted existed). Thus, Plaintiffs may pursue their RICO claim alongside their contract claim.

**B. Plaintiffs Have Properly Alleged a RICO Enterprise**

The Sixth Circuit has rejected Defendants' argument that a parent and its subsidiaries cannot form a RICO enterprise. *See West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease Litig.)*, 727 F.3d 473, 492-93 (6th Cir. 2013) ("the distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetuate a fraudulent scheme") (collecting cases). Plaintiffs allege an association-in-fact enterprise consisting of related, but separate legal entities, operating in distinct lines of business. Compl. ¶¶ 211-13, ECF No. 1, PageID.56. An association-in-fact enterprise is one with "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

The "CVS 340B Enterprise" shares a "common purpose of depriving profits and revenue from the administration of [Plaintiffs'] 340B Drug Program…" Compl. ¶ 213,

ECF No. 1, PageID.56. Plaintiffs describe the relationships among those associated with the "CVS 340B Enterprise" and their interlocking roles in carrying out the scheme. *Id.* ¶¶ 108-61, PageID.31-45. As to longevity, Defendants' scheme has operated continuously "since at least January 2020 and occurring monthly thereafter." *Id.* ¶ 221, PageID.58-60. In these circumstances, it would be highly unusual to immunize a parent corporation of liability for doing the very thing RICO was designed to prevent; that is, using legally distinct entities "as a vehicle through which unlawful … activity is committed." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001).

### C. Plaintiffs Adequately Plead Predicate Acts

#### *i. Defendants' Violations of §§ 664 and 1954 Caused Plaintiffs' Injury*

Defendants argue that Plaintiffs' injury was not "proximately caused" by Defendants' violation of 18 U.S.C. § 664 (embezzlement) and 18 U.S.C. § 1954 (kickbacks) because the party more directly harmed by these violations were the payors, not Plaintiffs.[17] Mot. at 32, ECF No. 19, PageID.212. As support, Defendants principally rely upon the inapposite decision in *Grow Mich., LLC v. LT Lender, LLC.*

In *Grow Mich.*, the plaintiff loaned a startup company $5,000,000, and the startup defaulted on the loan due to actions by the defendants. *Grow Mich., LLC*, 50 F.4th 587, 590-92 (6th Cir. 2022). The Sixth Circuit found no "straight line" between the

[17] Defendants concede Plaintiffs was directly harmed by Defendants' alleged wire fraud.

defendant's violations and the creditor's injury, thus "precluding a finding of proximate cause" under RICO. *Id.* at 595 (quotation omitted). *Grow Mich.* has no application here.

As alleged, CaremarkPCS serves as an intermediary between payors and pharmacies. Compl. ¶ 73, ECF No. 1, PageID.21-22. CaremarkPCS "manag[es] both ends of the transaction (*i.e.,* the reimbursement rate PBMs pay to pharmacies and the amounts the PBMs charge health benefit plan for such drugs)[.]" *Id.* "[M]uch of the reimbursement for 340B drugs come from self-funded benefit plans that also provide medical and pharmacy benefits to their members." *Id.* ¶ 215, PageID.57. However, CaremarkPCS used its position as intermediary to siphon off reimbursement paid by third-party payors for claims identified as 340B eligible, all which was due and owing to Plaintiffs. *Id.* ¶¶ 108-15, PageID.31-33. Unlike *Grow Mich.*, where the "first level of injury [was] to the [startup], and the creditor suffer[ed] only because he ha[d] a claim against it," there is a "straight line" between Defendants' theft of employee plan funds and Plaintiffs' injury. *Grow Mich., LLC*, 50 F.4th at 595.

### *ii. Plaintiffs Have Sufficiently Pled Each Predicate Act*

Defendants next argue that each predicate act lacks particularity, but they overstate the Rule 9(b) standard set out above. *See, supra*, Section IV.

As to embezzlement, Defendants argue that Plaintiffs failed to "identify what funds were diverted, when, by whom, why it was unlawful, or which plan's funds they were in the first place." Mot. at 33, ECF No. 19, PageID.213. This argument would

have merit if, as Defendants claim, Plaintiffs devoted only three paragraphs (Compl. ¶¶ 214-16) to support this predicate act. Mot. at 33, ECF No. 19, PageID.214. However, Defendants conveniently ignore the preceding 200-plus paragraphs describing in painstaking detail the scheme they manufactured to embezzle plan funds. Plaintiffs allege that Defendants (the "who") misrepresented the "gross insurance payment" and co-pay amounts (the "what") that CaremarkPCS received from payors by providing Plaintiffs with monthly reports from Wellpartner (the "when") showing a total payment that "was materially less than the amount actually adjudicated and paid by the applicable payor at the point of sale[.] …" *See, e.g.,* Compl. ¶ 221, ECF No. 1, PageID.58-60. As previously explained in Section VII.C.i., the 340B Savings pocketed by Defendants was, in part, "reimbursement for 340B drugs com[ing] from self-funded employee benefit plans…" *Id.* ¶ 215, PageID.57. Thus, the Complaint provides "fair notice" of the facts supporting Defendants' alleged violation of 18 U.S.C. § 664.

While Defendants characterize as "key" the absence of allegations identifying "which plan's funds they were in the first place[,]" Mot. at 33, ECF No. 19, PageID.213, they cite no authority requiring that degree of particularity under § 664. In fact, courts have rejected similar arguments claiming that failure to specify the plan assets allegedly converted was grounds for dismissal. *See AMA v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 444 (S.D.N.Y. 2008) (plaintiff's delineation of "plan funds specifically earmarked as guaranteed benefits" afforded defendants adequate notice). Nor do Defendants explain how the absence of such allegations deprives them fair notice.

As to kickbacks, Defendants argue that Plaintiffs' allegations are insufficient because the Complaint fails to allege that any payment a Defendant received constituted a kickback as opposed to a bona fide payment. *See* Mot. at 34, ECF No. 19, PageID.214. As an initial matter, Plaintiffs do allege that Defendants retained a "kickback" or "thing of value" that "exceeds the bona fide compensation and fair market value of the Contract Pharmacy services rendered in relation to the administration of Plaintiffs' 340B program, when conducting the affairs of the CVS 340B Enterprise." Compl. ¶¶ 217-18, ECF No. 1, PageID.57-58. When read in its entirety, Plaintiffs allege facts to plausibly suggest that the "thing of value" refers to the diverted 340B Savings. Defendants' argument about whether their retention of 340B Savings qualifies as a "kickback" or instead represents "bona fide compensation" raises a question of fact.

Defendants then interpret the terms "because of" and "with the intent to" as used in Section 1954 as requiring some form of collusion between Defendants and an employee benefit plan to state a claim. *See* Mot. at 34, ECF No. 19, PageID.214. However, Defendants failed to cite any authority requiring an agreement between the wrongdoer and the employee benefit plan. Nor does the text of Section 1954 require as much. In fact, Section 1954 uses the phrase "*receives or agrees to receive*," suggesting that an agreement is sufficient but not necessary to find liability under Section 1954.

Finally, the Complaint includes John Doe Defendants "who executed and ratified the fraudulent arrangement" on behalf of each corporate Defendant. Compl. ¶¶ 39-42, ECF No. 1, PageID.12-13. These John Does are indictable as contemplated

by Section 1954, and Defendants do not suggest otherwise. Accordingly, Plaintiffs have alleged sufficient facts to state a claim under 18 U.S.C. § 1954.

With respect to wire fraud, Defendants' argument that Plaintiffs' RICO claim is nothing more than a breach of contract fails for the reasons discussed in Section VII.A, *supra*.

Defendants also argue wire fraud is not alleged with particularity because the second and third subparts under Paragraph 221 "do not allege that any information contained in the documents was factually inaccurate." Mot. at 35-36, ECF No. 19, PageID.215-16. Defendants misread Paragraph 221 because the *first* subpart (styled "Wellpartner Monthly Electronic Remittance Reports"), plainly alleges "Wellpartner transmitted to Plaintiffs[], via interstate electronic data transmission, monthly remittance reports" that "***falsely*** reflected a gross insurance payment to CVS Specialty that was materially less than the amount actually adjudicated and paid by the applicable payor at the point of sale, and ***falsely*** reflected a patient co-pay/co-insurance amount of $0.00 on the majority of claims." Compl. ¶ 221, ECF No. 1, PageID.58-60 (emphasis added). The second and third subparts describe the mechanisms by which Defendants operationalized their scheme. *Id.* When read together, Plaintiffs allege Defendants used interstate wire communications to falsely represent the gross insurance amount paid on 340B claims and conceal those false representations in violation of 18 U.S.C. § 1343. Those communications were "incident to an essential part of the scheme" including

transmission of "Wellpartner Monthly Electronic Remittance Reports" which contain false information. *Schmuck v. U.S.*, 489 U.S. 705, 711-12 (1989).

Defendants also contend that "Plaintiffs fails to plead any factual support showing that Wellpartner's reports purported to reflect the amount 'paid by the applicable payor,' rather than the reimbursement received by CVS Specialty." Mot. at 36, ECF No. 19, PageID.216. This argument lacks merit. Under Rule 9(b), it is sufficient to allege that the Wellpartner reports "falsely reflected a gross insurance payment to CVS Specialty that was materially less than the amount actually adjudicated and paid by the applicable payor at the point of sale…" Compl. ¶ 221, ECF No. 1, PageID.58-60. Rather, Defendants' arguments merely dispute Plaintiffs' facts and will be an issue for discovery and trial, not grounds for dismissal.[18] The Court should not dismiss the RICO claim.

## VIII. The Court Should Not Dismiss the MCPA Claim

Defendants first argue that the Michigan Consumer Protection Act ("MCPA") does not apply to service contracts between commercial parties. Mot. at 37, ECF No. 19, PageID.217. But the MCPA permits any "person," defined to include a "corporation, limited liability company, … incorporated or unincorporated association,

---

[18] Defendants also argue that any false reporting of the patient copayment has "no nexus whatsoever to Plaintiffs' theory of wrongdoing in this case[]" and is not material. Mot. at 36, ECF No. 19, PageID.216. Materiality is evident from the Complaint, which alleges that "the false reporting of patient co-pay/co-insurance as $0.00 *further concealed the true point-of-sale transaction from Plaintiffs*." Compl. ¶ 226, ECF No. 1, PageID.63 (emphasis added).

or other legal entity," to recover. Mich. Comp. Laws §§ 445.911(2), 445.902(1)(d). The parties plainly fall within this definition. *See Zine v. Chrysler Corp.*, 236 Mich. App. 261, 272 (Mich. Ct. App. 1999) (the "inclusion of corporations and other business entities in the definition of 'person' serves [the] broader purpose" of the MCPA).

Defendants further argue that the parties' contract is for "contract pharmacy services," the principal output of which is "340B savings" used "primarily for purpose of operating [its] business." Mot. at 37, ECF No. 19, PageID.217. The MCPA defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes." Mich. Comp. Laws § 445.902(d). Courts have rejected Defendants' hyper-technical approach to classifying which activities are "for personal, family or household purposes." *See Slobin v. Henry Ford Health Care*, 469 Mich. 211, 217 (2003) (noting cases present a "fine line between activities within the scope of the MCPA and those beyond its coverage."). Rather, "the proper focus of the MCPA is the use to which goods or services are put," not the parties' corporate form or labels they affix to their contract. *Progressive Distrib. Servs. v. UPS*, 186 F. Supp. 3d 741, 756 (W.D. Mich. 2016) (citing *Zine*, 236 Mich. App. at 272).

The purpose of the Agreement is to facilitate the delivery of 340B drugs to Plaintiffs' eligible patients. Plaintiffs allege that 340B drugs are "outpatient prescription drugs purchased by these entities for their patients," Compl. ¶ 54, ECF No. 1, PageID.16, and that the Agreements exist to serve "ultimately indigent and un-insured patients — the intended beneficiaries" of the program, *id.* ¶ 3, PageID.3. The funds

Defendants diverted are "funds that Congress intended to flow to the Covered Entities and their patients." *Id.* ¶ 184, PageID.50. In short, Defendants' scheme "directly impacts the Plaintiffs' poorest and most vulnerable patients who are the true intended beneficiaries of the 340B Program." *Id.* ¶ 193, PageID.52.

Defendants further argue that "[f]ailure to identify a specific prohibited act is fatal to a plaintiff's MCPA claim." Mot. at 38, ECF No. 19, PageID.218. But the pleading requirements around violations of the MCPA are not so absolute. Courts have consistently held that "as a remedial statute meant to prohibit unfair practices in trade or commerce, the MCPA is to be liberally construed to advance its intended goals." *Mannion v. Henry Elec., LLC*, 2026 U.S. Dist. LEXIS 17633, at *26 (E.D. Mich. Jan. 29, 2026) (citing *Brownlow v. McCall Enterprises, Inc.*, 315 Mich. App. 103, 125 (2016)). Plaintiffs allege numerous violations of the MCPA's provisions including those prohibiting misrepresentations of material fact (MCL § 445.903(bb)) and failure to reveal material facts tending to mislead or deceive the consumer (MCL § 445.903(s)). Thus, the Complaint provides more than enough information to afford Defendants notice of the alleged misconduct giving rise to their violation of MCL § 445.903.

## IX. The Complaint Aptly Alleges CVS Health's Direct Participation

Defendants argue CVS Health cannot be liable for the acts of its subsidiaries. While a parent corporation is distinct from its subsidiary and generally not liable based solely on its controlling interest, *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007), this rule is inapplicable where the parent is directly liable for its own misconduct.

*See U.S. v. Bestfoods*, 524 U.S. 51, 65 (1998). Also, courts will pierce the veil between parent and subsidiary where the subsidiary is an instrumentality of the parent and used to commit fraud or wrong resulting in loss or injury to plaintiffs. *Dutton Partners*, 802 N.W.2d at 722; *Corrigan*, 478 F.3d at 724. Here, the facts satisfy both direct liability and veil-piercing theories. Specifically, CVS Health executed and ratified the scheme by "establish[ing], … and direct[ing] the internal policy to reduce reimbursement on 340B-identified claims after the point of sale[,]…[and] direct[ing] WellPartner to report only the artificially reduced 340B rates." Compl. ¶ 221, ECF No. 1, PageID.58-60.

Plaintiffs also plead facts satisfying the "mere instrumentality," fraud, and injury prongs of the veil-piercing analysis, as explained *supra*. *See* Compl. ¶¶ 9, 75, 82, 88, ECF No. 1, PageID.5, 22, 24, 26. Plaintiffs further allege that CVS Health was aware of the immense profit generated by Defendants' scheme and treated such profit as its own. Indeed, CVS Health's own SEC filings acknowledge that a reduction in 340B Contract Pharmacy revenues could "materially and adversely affect" its financial results. *Id.* ¶ 223, PageID.61. That admission shows the retention of 340B Spread was a deliberate and financially significant decision made at the corporate parent level, not the act of an independently operating subsidiary. The Court should not dismiss CVS Health.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss entirely. Should the Court find Plaintiffs' claims not adequately pled, Plaintiffs respectfully request a dismissal without prejudice to amend the complaint to cure any deficiencies.

Dated: August 27, 2026

Respectfully submitted,

**FRIER LEVITT, LLC**

By: */s/ Matthew J. Modafferi*
Matthew J. Modafferi
Jonathan E. Levitt
One World Trade Center
Suite 45E
285 Fulton Street
New York, NY 10007
Telephone: (646) 970-2711

84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Facsimile: (973) 618-0650

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2026, a true and accurate copy of the foregoing document was filed electronically through the ECF system and counsel of record received notification via ECF.

Dated: August 27, 2026

Respectfully submitted,

By: *<u>/s/ Matthew J. Modafferi</u>*
Matthew J. Modafferi
FRIER LEVITT, LLC
One World Trade Center
Suite 45E
285 Fulton Street
New York, NY 10007
Telephone: (646) 970-2711
mmodafferi@frierlevitt.com
*Attorney for the Plaintiffs*