**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

HENRY FORD HOSPITAL, HENRY FORD HEALTH JACKSON HOSPITAL, HENRY FORD ST. JOHN HOSPITAL, HENRY FORD HEALTH WYANDOTTE HOSPITAL

*Plaintiffs*,

v.

CVS HEALTH CORPORATION, CAREMARKPCS HEALTH, LLC, CAREMARK, L.L.C., WELLPARTNER, LLC, and JOHN DOES 1-15,

Defendants.

Case No. 2:26-cv-12435
Hon. Susan K. DeClercq
Hon. Curtis Ivy, Jr.

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................ 1

I. The Court Should Dismiss the Breach-of-Contract Claim ................... 1

II. The Court Should Dismiss the Implied Covenant of Good Faith Claim ................................................................................ 5

III. The Court Should Dismiss the Fraud Claim ........................................ 6

IV. The Court Should Dismiss the Tortious Interference with Contract Claim ........................................................................... 8

V. The Court Should Dismiss the Unjust Enrichment Claim .................. 10

VI. The Court Should Dismiss the RICO Claim ...................................... 11

VII. The Court Should Dismiss the Michigan Consumer Protection Claim ......................................................................... 14

VIII. The Court Should Dismiss CVS Health Corporation ........................ 15

# TABLE OF AUTHORITIES

## CASES

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
176 F.3d 315 (6th Cir. 1999) ....................8

*Ajuba Int'l, L.L.C. v. Saharia*,
871 F. Supp. 2d 671 (E.D. Mich. 2012) ....................10, 11

*Am. Med. Ass'n v. United Healthcare Corp.*,
588 F. Supp. 2d 432 (S.D.N.Y. 2008) ....................13

*Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011)....................5

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
898 F.3d 710 (6th Cir. 2018) ....................9

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
32 F. Supp. 3d 824 (E.D. Mich. 2014) ....................10

*Broder v. Cablevision Systems Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004) ....................4

*Dana Corp. v. Blue Cross & Blue Shield Mutual*,
900 F.2d 882 (6th Cir. 1990) ....................11

*Derderian v. Genesys Health Care Sys.*,
263 Mich. App. 364 (2004) ....................9

*Eagle Trim, Inc. v. Eagle-Picher Indus., Inc.*,
205 F. Supp. 2d 746 (E.D. Mich. 2002) ....................12

*Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*,
166 Mich. App. 772 (1988) ....................9

*Frisch v. FCA US, LLC*,
2026 U.S. Dist. LEXIS 141394 (E.D. Mich. June 25, 2026) ....................2

*Gardner v. Flagstar Bank, FSB*,
2021 U.S. Dist. LEXIS 158548 (E.D. Mich. Aug. 23, 2021)....................3

*Grochowski v. Phoenix Construction*,
318 F.3d 80 (2d Cir. 2003) ....................................................................4, 5

*Grow Mich., LLC v. LT Lender, LLC*,
50 F.4th 587 (6th Cir. 2022) .......................................................................13

*Home Owners Ins. Co. v. ADT LLC*,
109 F. Supp. 3d 1000 (E.D. Mich. 2015) ........................................................6

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,
209 Mich. App. 365 (1995) ...........................................................................7

*In re ClassicStar Mare Lease Litig.*,
727 F.3d 473 (6th Cir. 2013) .......................................................................12

*In re DuMouchelle*,
667 B.R. 122 (Bankr. E.D. Mich. 2023)..........................................................2

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) .........................................................11

*In re OnStar Cont. Litig.*,
2010 WL 3516691 (E.D. Mich. Aug. 25, 2010)...............................................1

*Kevelighan v. Trott & Trott, P.C.*,
771 F. Supp. 2d 763 (E.D. Mich. 2010) ...................................................11, 12

*Kloian v. Domino's Pizza, L.L.C.*,
733 N.W.2d 766 (Mich. Ct. App. 2006)..........................................................2

*Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*,
489 Mich. 157 (2011) .................................................................................12

*Lyngaas v. Curaden Ag*,
992 F.3d 412 (6th Cir. 2021) .........................................................................3

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187 (2006) ....................................................................10, 11

*Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*,
492 F. App'x 518 (6th Cir. 2012) ....................................................................3

*Omnicom Grp., Inc. v. 880 W. Long Lake Assocs.*,
504 F. App'x 487 (6th Cir. 2012) ....................................................................2

*People ex rel. Potter v. Mich. Bell Tel. Co.*,
224 N.W. 438 (Mich. 1929)............................................................................3

*Slobin v. Henry Ford Health Care*,
469 Mich. 211 (2003) ....................................................................................14

*Steel Strip Wheels, Ltd. v. Gen. Rigging, LLC*,
2009 U.S. Dist. LEXIS 90407 (E.D. Mich. Sep. 30, 2009).................................7

*Tyson v. Sterling Rental, Inc.*,
836 F.3d 571 (6th Cir. 2016) ........................................................................12

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) ..........................................................................8

*Willis v. New World Van Lines*,
123 F. Supp. 2d 380 (E.D. Mich. 2000) ..........................................................9

**STATUTES**

18 U.S.C. § 664.............................................................................................13

18 U.S.C. § 1954......................................................................................13, 14

MCL § 550.950...............................................................................................5

MCL § 550.952...............................................................................................5

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ....................................................................................7, 8

## INTRODUCTION

The Opposition cannot change reality: this is a simple payment dispute between Plaintiffs and one company, CVS Specialty. The Opposition's attempt to recast that dispute as some insidious "fraud" by four Defendants is foreclosed by the Complaint's deficient allegations and various uncontested legal rules that prevent recasting contract disputes as fraud, RICO violations, or the like. And Plaintiffs cannot escape dismissal by invoking unpled theories, repeating insufficient allegations, or ignoring Defendants' cases. The Court should grant the Motion.

## ARGUMENT

### I. The Court Should Dismiss the Breach-of-Contract Claim

**A.** Plaintiffs offer no persuasive reason why CVS Health, CaremarkPCS, or Wellpartner could be liable for breaching a contract to which they are not parties. Plaintiffs first say the contract "impose[s] obligations not merely on Caremark but also *their affiliates*." PageID.396 (emphasis in original) (quoting PageID.28).[1] But "a contract is 'between'—hence binding on—only those who are parties to it, as evidenced by their signatures." *In re OnStar Cont. Litig.*, 2010 WL 3516691, at *5 (E.D. Mich. Aug. 25, 2010) (citation omitted). Even if the term "affiliates," as used in the CVS Specialty contract(s), was broad enough to encompass those non-signatories (it is not), Plaintiffs do not allege CVS Health, CaremarkPCS, or

[1] Unless noted, all internal quotation marks are omitted and all emphasis is added.

Wellpartner *entered into* a contract with Plaintiffs, thus failing to plead a contract with those non-signatories.[2]

Plaintiffs next argue that the non-signatories "inten[ded] to be bound." PageID.397 (quoting *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006); then citing *Frisch v. FCA US, LLC*, 2026 U.S. Dist. LEXIS 141394, at *14 (E.D. Mich. June 25, 2026)). But Plaintiffs make no allegations pleading that intention, which at this posture could only be ascertained by "looking to the express words of the parties and their visible acts." *Kloian*, 733 N.W.2d at 771; *see Frisch*, 2026 U.S. Dist. LEXIS 141394, at *14 (parties who invoked warranty booklet's benefits were bound to booklet's terms).[3]

Finally, and most remarkably, Plaintiffs invoke alter ego liability and veil-piercing. This new theory is "procedurally improper because the Complaint does not contain any allegation of alter ego [or] veil-piercing." *In re DuMouchelle*, 667 B.R. 122, 131-32 (Bankr. E.D. Mich. 2023), *report and recommendation adopted*,

[2] Understanding the scope of the term "affiliates" requires—at a minimum—reading the term in its contractual context, which is impossible here because Plaintiffs failed to attach the contracts or even quote the relevant provision(s). Moreover, courts often find the term "affiliates" ambiguous in context. *See Omnicom Grp., Inc. v. 880 W. Long Lake Assocs*., 504 F. App'x 487, 491 (6th Cir. 2012) (collecting cases).

[3] Plaintiffs erroneously say that *Frisch* also involved "micro-managing" a sister company's performance. PageID.398. *Frisch*, in relevant part, concluded that individuals who invoked warranty benefits could not object to an arbitration provision in the same warranty contract. It does not mention "micro-managing."

663 B.R. 349 (E.D. Mich. 2024). Nor do Plaintiffs allege that any Defendant "exists as a device to evade legal obligations," as Plaintiffs' own authority requires. *People ex rel. Potter v. Mich. Bell Tel. Co.*, 224 N.W. 438, 440 (Mich. 1929) (cited at PageID.399). The inapposite allegations fall short of pleading the relevant factors. *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 420 (6th Cir. 2021) (listing factors).

**B.** As to CVS Specialty, Plaintiffs ignore the cases that required them to plead "the actual terms of the contract." PageID.192 (quoting *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012)). In Plaintiffs' own authority, the contract was attached to the complaint, as evidenced by the court's block quoting of the provisions at issue. *See Gardner v. Flagstar Bank, FSB*, 2021 U.S. Dist. LEXIS 158548, at *8-11 (E.D. Mich. Aug. 23, 2021) (cited at PageID.401); *see also* Case No. 2:20-cv-12061, ECF No. 14-1, PageID.97-131.

**C.** Plaintiffs also fail to salvage their five theories of why CVS Specialty supposedly breached its contract with Plaintiffs. *See* PageID.49. For the first theory, Defendants argued that the Complaint's vague statement that CVS Specialty breached a provision relating to the remittance of all reimbursement obtained by Defendants from all sources is not well pled—and Plaintiffs' only response is to point to those same vague statements. PageID.401. As for the second theory, Plaintiffs offer no response at all to Defendants' argument that the Complaint alleges no facts suggesting that CVS Specialty made any commitments to Plaintiffs about

what 340B reimbursement amounts CVS Specialty would receive from the PBM. Plaintiffs' responses to the remaining three theories fail as well.

***1. Regulation-Based Theory.*** Plaintiffs do not dispute that HRSA lacks authority to regulate contract pharmacies like CVS Specialty and that no regulation requires CVS Specialty "to ensure that all 340B savings will accrue to the Covered Entities and that Defendants will not retain Spread on 340B claims." PageID.49. Plaintiffs merely say the contracts required CVS Specialty "to comply with the HRSA OPA's Contract Pharmacy Services Guidelines," which supposedly "make clear that Covered Entities, not PBMs or contract pharmacies, decide how to spend 340B revenues from the contract pharmacy relationship." PageID.402. But Plaintiffs never identify any provision of those guidelines that applies to CVS Specialty, a contract pharmacy. And Plaintiffs never respond to the point that HRSA ***rejected*** a proposal to include in its final guidance language stating that all savings from the 340B program should remain with the covered entity. PageID.195.

Plaintiffs also fail to overcome a separate problem: using a contract claim to circumvent a regulation's lack of a private right of action. Plaintiffs argue that the most pertinent authority, *Broder v. Cablevision Systems Corp.*, 329 F. Supp. 2d 551, 558 (S.D.N.Y. 2004), *aff'd*, 418 F.3d 187 (2d Cir. 2005), is wrongly decided, since its basis, *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), should not apply to the 340B Program. PageID.402-03. But this argument is foreclosed by

the Supreme Court's express application of *Grochowski* to the 340B Program in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 117 n.3, 118 (2011).

***2. Michigan-Law Theory.*** *First*, Plaintiffs' own reading of *Grochowski* forecloses its Michigan-law-based breach theory. According to Plaintiffs, the *Grochowski* rule, properly understood, is that a contract claim is unavailable where, as here, a statute provides for administrative remedies. PageID.402 n.6; *see* MCL §§ 550.950, 550.952. *Second*, Plaintiffs do not dispute that the Michigan law applies only to PBMs, nor do Plaintiffs explain how "CVS Specialty enabl[ing] CaremarkPCS" constitutes a violation of the law by CVS Specialty. PageID.404.

***3. Audit-Related Theory.*** Plaintiffs do not allege any specifics concerning what "procedures" were promised, properly invoked, but then not provided, or that Plaintiffs complied with the "procedures." Plaintiffs say they pled $66 million in damages and seek specific performance, but those damages arise out of Plaintiffs' other contract theories, not from denial of the audit itself. And specific performance is unavailable as a matter of law, since the contract is terminable at will. PageID.199.

## II. The Court Should Dismiss the Implied Covenant of Good Faith Claim

Plaintiffs do not dispute that Michigan does not recognize a separate claim for breach of the duty of good faith and fair dealing. Because Plaintiffs have pled the implied covenant separately, the claim fails. Plus, Plaintiffs' new, unpled contention—that, by remitting less than all reimbursement, Defendants "exercised

[their] discretion in bad faith," PageID.407—contradicts the Complaint, which says the same failure to remit all reimbursement breached an express contractual term.[4]

## III. The Court Should Dismiss the Fraud Claim

**A.** Plaintiffs acknowledge that "numerous cases" have dismissed fraud claims premised on "a failure to perform, or concealment of nonperformance of, a contractual obligation," including "contractual reimbursement" obligations. PageID.409-10. That describes Plaintiffs' fraud claim to a T. As Plaintiffs argue here, their fraud "allegations describe intentional misrepresentations by CVS Specialty and Wellpartner to make it seem as though CVS Specialty and its affiliates performed fully under the Agreements." PageID.409. Those allegations cannot support a fraud claim, and Plaintiffs offer no reason to hold otherwise.

Plaintiffs say Defendants' cases addressed "a failure to perform specific contractual obligations, not affirmative misrepresentations made through separate reporting instruments to conceal contractual nonperformance." PageID.409. But Plaintiffs cite no case drawing such a distinction. Claims based on affirmative representations still fail if they do not rest on a legal duty "separate and distinct from" a contractual duty—and Plaintiffs do not identify any such duty. *See, e.g.*, *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1007-08 (E.D. Mich.

[4] Plaintiffs do not defend their implied-covenant theory premised on the termination of the contract. *See* PageID.64-65. They have thus abandoned that theory.

2015) (dismissing claim based on representation concerning contract performance).

Plaintiffs also say the fraud claim survives because the misrepresentations were "extraneous to the contract." PageID.408 (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 373 (1995)). But misrepresentations are "not extraneous" where, as here, they are "but another thread in the fabric of the plaintiffs' contract claim." *Huron Tool*, 209 Mich. App. at 373 (citation omitted). In Plaintiffs' cases, unlike here, the misrepresentations were "extraneous" because they "induce[d] the plaintiffs to enter into the original agreement" or "additional undertakings." *Id.* (citation omitted); *see Steel Strip Wheels, Ltd. v. Gen. Rigging, LLC*, 2009 U.S. Dist. LEXIS 90407, at *37 (E.D. Mich. Sep. 30, 2009). Plaintiffs do not allege fraudulent inducement. Each alleged misrepresentation occurred *after* the contract was signed, and all relate to contractual performance; thus, they cannot have induced Plaintiffs to sign, and Plaintiffs identify no "additional undertakings" beyond signing the contract. *See* PageID.54.[5]

**B.** Separately, Plaintiffs cannot overcome failing to plead fraud with particularity under Rule 9(b). Plaintiffs' only answer is the following:

Plaintiffs identify the speakers (Defendants), the misrepresentation (the

---

[5] Plaintiffs say they "would not have entered into the Agreements had [they] known that Defendants would impose discriminatory pricing." PageID.409. That is not fraudulent inducement, but an allegation that Plaintiffs would not have signed the contract if they knew there would be an (alleged) breach. Post-formation breaches are not *pre-contractual misrepresentations* that support fraudulent inducement.

> "gross insurance payment" and patient co-pay), the form of the misrepresentation (the "remittance reports"), the interstate path of those misrepresentations, and their frequency (*i.e.*, monthly). Compl. ¶¶ 199, 221, ECF No. 1, PageID.53, 58-60. Plaintiff even provides numerous examples of claims on which Defendants perpetrated their scheme. *Id.* ¶ 125-42, PageID.36-40.

PageID.410-11. Plaintiffs completely ignore the litany of cases rejecting similarly vague allegations. PageID.202-03. Equally telling, Plaintiffs cite only two cases, and one actually affirmed *dismissal* for "fail[ure] to meet the requirements of Rule 9(b)." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 324 (6th Cir. 1999). The other merely held that a False Claims Act relator need not allege the "identity of the natural person within the corporate defendant who submitted false claims." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 506, 509 (6th Cir. 2007). Neither of these cases helps Plaintiffs.

Nor do the Complaint's allegations. For the speaker, the undifferentiated reference to "Defendants" does not suffice. The form of the misrepresentation fares no better: the "remittance reports" came from only Wellpartner; Plaintiffs say nothing about the other Defendants. *See* PageID.45. Even the supposed "examples" fall flat: they allege *incorrect payments*, but not *false representations*. PageID.36-40. Rule 9(b) demands more.

## IV. The Court Should Dismiss the Tortious Interference with Contract Claim

Plaintiffs fail to overcome any of this claim's three independent deficiencies. *First*, fatally, there is no well-pled breach of contract. *See supra* pp. 1-5.

*Second*, the corporate family privilege bars this claim. Plaintiffs do not dispute that entities within the same corporate family are generally privileged against tortious interference claims.[6] Plaintiffs instead invoke a "wrongful means" exception, PageID.412, but the "wrongful means" are the same fraud and contract theories that independently fail. *See supra* pp. 1-8; *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 166 Mich. App. 772, 780 (1988) ("[D]efendants motivated by legitimate personal and business reasons are shielded from [tortious interference liability.]").

*Third*, Plaintiffs have not alleged the requisite intent. Plaintiffs say intent may be inferred from egregious conduct, PageID.415 (citing *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 716 (6th Cir. 2018)), but the Complaint alleges only that Defendants' purpose was to retain revenue for themselves—i.e., to "pocket" the "Spread" as profit, *see* PageID.7, PageID.27, PageID.33, PageID.37. That self-interested business motive is not the "malice" or intent to "invad[e] the contractual rights" of another that Michigan law demands. *See Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 382 (2004) (citation omitted).

---

[6] Plaintiffs attempt to distinguish *Willis v. New World Van Lines*, 123 F. Supp. 2d 380 (E.D. Mich. 2000), but acknowledge the corporate family privilege, which is all that Defendants cited *Willis* for. Despite Plaintiffs' contrary assertion, PageID.414, there is no contradiction in Defendants' argument that (1) Caremark, LLC is the only Defendant that is a contract party and (2) its corporate family members are protected by the corporate family privilege. The corporate family privilege does not convert corporate family members into contract parties.

## V. The Court Should Dismiss the Unjust Enrichment Claim

**A.** Plaintiffs fail to allege that they—Plaintiffs, hospitals—conferred any benefit upon Defendants. Plaintiffs argue that Michigan law "does not require the alleged benefit to take the form of a payment made directly by the plaintiff to the defendant." PageID.417 (citing *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195-97 (2006)). But the court in *Morris Pumps* merely addressed a benefit that passed through an intermediary where the plaintiff was the source. *See* 273 Mich. App. at 197 (holding that "defendant's retention of the materials supplied by plaintiffs" was unjust). Here, the problem is not the route of the payment, but its source. The money Defendants allegedly retained was paid by insurers and patients, not hospitals. *See* PageID.66 (alleging Defendants "unfairly obtained a benefit").

**B.** Plaintiffs cannot overcome the second, independent problem: the existence of an express contract precludes the claim. Plaintiffs invoke alternative pleading, PageID.415-16, but that is permitted only where there is a genuine doubt about whether a contract *exists*—not mere disagreement over the scope, terms, or performance, *see Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 834 (E.D. Mich. 2014) ("If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract."). For example, in *Ajuba International, L.L.C. v. Saharia*, 871 F. Supp. 2d 671 (E.D. Mich. 2012), the court permitted alternative pleading "because Defendants dispute[d] that

any enforceable contract exist[ed]." *Id.* at 692. And cases decided after *Morris Pumps* have "regularly rejected plaintiffs' attempts to plead an unjust enrichment claim in the alternative where, as here, there is no dispute that an express contract covers the same subject matter." *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019). There is no dispute that CVS Specialty contracted with Plaintiffs, or that the contract governs the subject matter at issue. The disagreement concerns only whether Defendants *breached* the contract and which entities are bound by it. The contract thus bars this claim.

## VI. The Court Should Dismiss the RICO Claim

**A.** Plaintiffs miss the point in arguing there is no categorical bar to simultaneously pursuing a contract claim and a RICO claim. PageID.418-19. The problem is not the form of the claim, but the substance of the allegations: Plaintiffs cannot pursue a RICO claim that sounds in contract. PageID.209. Plaintiffs point to *Dana Corp. v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882 (6th Cir. 1990), in attempting to distinguish *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763 (E.D. Mich. 2010). But *Dana* is unlike this case: there, the plaintiff made independent, specific allegations supporting the fraud claim. *See* 900 F.2d at 885-86 & n.2 (noting "allegations of fraud, including the letters alleged to contain misrepresentations" and "allegations of specific employees who sent the letters"). Plaintiffs' allegations are more like *Kevelighan*, where the defendant allegedly acted

fraudulently by sending billing notices attempting to collect fees in excess of those due under the parties' contract. 771 F. Supp. 2d at 778.[7]

**B.** Plaintiffs also still fail to allege an "enterprise" comprising Defendants in the same corporate family. Plaintiffs overstate the holding of *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473 (6th Cir. 2013), which recognized that "[t]ypically, a parent corporation and its subsidiaries do not satisfy the distinctness requirement because they cannot form an enterprise distinct from the parent." *Id.* at 493. The only exception is if "the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *Id.* Plaintiffs point to no allegations (and make no argument) that the corporate parent here, CVS Health, "use[d] the separately incorporated nature of its subsidiaries" in this manner. Instead, Plaintiffs say the enterprise "consist[s] of related, but separate legal entities, operating in distinct lines of business." PageID.419. But an allegation that Defendants are "related, but separate" is precisely the "[t]ypical[]" fact pattern that does not satisfy the distinctness requirement. *In re ClassicStar*, 727 F.3d at 493.[8]

**C.** Plaintiffs do not adequately plead any predicate acts, for two reasons.

---

[7] Plaintiffs' other cases address overlap with tort claims, not RICO claims. *Loweke v. Ann Arbor Ceiling & Partition* Co., L.L.C., 489 Mich. 157, *172 (2011); Tyson v. Sterling* Rental, Inc., 836 F.3d 571, 581-82 (6th *Cir. 2016); Eagle Trim, Inc. v. Eagle-Picher* Indus., Inc., 205 F. Supp. 2d 746, 753-54 (E.D. Mich. 2002).

[8] *ClassicStar* also involved "other entities that were neither owned by [the parent] nor acting as its agents," which is not the case here. 727 F.3d at 493.

*First*, Plaintiffs fail to allege the RICO violations proximately caused their injury. Plaintiffs argue "there is a 'straight line' between Defendants' theft of employee plan funds and Plaintiffs' injury," PageID.421, but never explain how to draw that line. As in *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587 (6th Cir. 2022), the "first level" of injury under 18 U.S.C. § 664 or § 1954 is to the benefit plans—because those statutes *require* an injury to the plans for a violation. 50 F.4th at 595 (citation omitted). To the extent Plaintiffs were injured at all, it was "only because [they] ha[d] a claim" for reimbursement from the injured plans. *See id.*

*Second*, Plaintiffs fail to plead any predicate act with particularity. As to 18 U.S.C. § 664, Plaintiffs never explain how their allegations plead embezzlement of ERISA employee benefit plan funds (as opposed to improper reimbursement to Plaintiffs), and never connect any allegation to the requisite statutory elements. Plaintiffs cite a case in which the plaintiffs identified funds "specifically earmarked as guaranteed benefits" as the embezzled plan assets. *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 444 (S.D.N.Y. 2008) (emphasis and citation omitted). But here, Plaintiffs allege, without particularity, that "much of the reimbursement for 340B drugs come[s] from self-funded employee benefit plans." PageID.57. Plaintiffs' allegations for 18 U.S.C. § 1954 are even more deficient: Plaintiffs do not allege plan funds were involved, fail to explain how their factual allegations map onto the statute's elements, fail to identify any allegation that

Defendants had the requisite intent, and assert without factual support that "Defendants retained a 'kickback.'" PageID.423. Highlighting just how conclusory their § 1954 allegations are, Plaintiffs say generally naming individual John Does in the Complaint is sufficient to show individual culpability for a statutory violation. Finally, Plaintiffs' wire fraud predicate acts still face the same deficiencies as their fraud claim. *Supra* pp. 6-8.

## VII. The Court Should Dismiss the Michigan Consumer Protection Claim

**A.** Plaintiffs cite to no case upholding an MCPA claim on facts analogous to this case. Plaintiffs argue there is a "fine line between activities within the scope of the MCPA and those beyond its coverage." PageID.426 (quoting *Slobin v. Henry Ford Health Care*, 469 Mich. 211, 217 (2003)). But in *Slobin*, the court dismissed the MCPA claim; though the plaintiff's law firm was overcharged for a copy of his medical records, "the medical records were sought principally so that the law firm itself could engage in its own business or commercial enterprise, namely, the evaluation and pursuit of legal avenues to procure financial rewards and other relief for its client." 469 Mich. at 217. So too here: Plaintiffs sought contract pharmacy services so they could engage in their own business or commercial enterprise.

**B.** Plaintiffs cite no case where an MCPA claim survived a pleadings challenge when it failed to identify a specific section of the MCPA the defendant allegedly violated. While Plaintiffs assert without much elaboration that they allege

"numerous violations" of the MCPA, that assertion is not well pled, no specific subsection is identified in the Complaint itself, and Plaintiffs do not connect any allegations of fact to the elements of the MCPA sections they belatedly point to in opposition. PageID.427. On this basis, too, the MCPA claim should be dismissed.

**VIII. The Court Should Dismiss CVS Health Corporation**

Contrary to Plaintiffs' claim, the Complaint does not allege that CVS Health "designed and implemented" the supposed scheme. PageID.396. At best, it alleges that CVS Health acted "in conjunction and coordination" with the other Defendants. *E.g.*, PageID.31. Plaintiffs merely claim CVS Health "was aware of the immense profit generated by Defendants' scheme and treated such profit as its own," since it reported the financials of its subsidiaries. PageID.428. But that action is entirely consistent with CVS Health's function as a holding company. PageID.219. Thus, none of those allegations show that CVS Health *itself* was involved in the alleged scheme. And Plaintiffs alleged no facts to pierce the corporate veil. *Supra* pp. 2-3.

Dated: September 23, 2026

Respectfully submitted,

/s/ *Roger P. Meyers*

Roger P. Meyers
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (248) 822-7844
Facsimile: (248) 822-7000
meyers@bsplaw.com

Grant A. Geyerman
Joseph S. Sandoval-Bushur
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
ggeyerman@wc.com
jsandoval-bushur@wc.com

*Counsel for Defendants*